ATTORNEYS FOR APPELLANTS
Sherrill Wm. Colvin
Lori W. Jansen
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE LaRea VanHoey
Cathleen M. Shrader
Michael H. Michmerhuizen
John M. Clifton, Jr.
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEES FORT WAYNE OB/GYN
CONSULTANTS, LLC AND MARVIN E. EASTLUND,
M.D.
Edward L. Murphy, Jr.
Jason A. Scheele
Fort Wayne, Indiana

# In the
# Indiana Supreme Court

No. 02S04-0608-CV-292

W. RUTH MULLINS AND JOHNCE MULLINS, JR.,

*Appellants (Plaintiffs below),*

v.

PARKVIEW HOSPITAL, INC., PREFERRED
ANESTHESIA CONSULTANTS, P.C., KATHRYN
B. CARBONEAU, M.D., UNIVERSITY OF SAINT
FRANCIS OF FORT WAYNE, INDIANA, INC.,
LaREA VANHOEY, FORT WAYNE OB/GYN
CONSULTANTS, LLC, AND MARVIN E.
EASTLUND, M.D.,

*Appellees (Defendants below).*

Appeal from the Allen Superior Court, No. 02D01-0212-CT-508
The Honorable Frederick A. Schurger, Special Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 02A04-0412-CV-671

**May 2, 2007**

**Sullivan, Justice.**

With appropriate permission and supervision, an emergency medical technician student performed a procedure on a patient at the outset of surgery. The procedure was not performed correctly and the patient sued the student for battery. We hold that the trial court properly granted the student summary judgment because there was no evidence that the student intended the harmful contact with the patient, a requirement of the tort of battery.

## Background

A few weeks before she was to have a vaginal hysterectomy, Ruth Mullins told her gynecologist, Dr. Marvin Eastlund, that she preferred privacy during her surgery. To this end, she crossed out two portions of his consent form before she signed it: first, she crossed out "I consent to the presence of healthcare learners," and second, she crossed out "I consent to the photography o[r] videotaping of the surgical, diagnostic, and/or medical procedure to be performed providing my name and identity is not revealed." (App. at 36.)

On the morning that her surgery was to be performed at Parkview Hospital by Dr. Eastlund, Ruth received assurance from the attending anesthesiologist, Dr. Kathryn Carboneau, that she would personally be handling Ruth's anesthesia. Dr. Carboneau's consent form, which Ruth signed, read in part: "I understand that my anesthesia care will be given to me by the undersigned or a physician privileged to practice anesthesia." (App. at 38.)

After Ruth was under anesthesia, Colin White, a Parkview Hospital employee, entered the operating room with LaRea VanHoey, a student in a University of St. Francis emergency medical technician ("EMT") certification program. This course of study requires students to perform a specified number of patient intubations.[1] White is referred to in the record as VanHoey's "preceptor," apparently the Parkview Hospital employee assigned to facilitate the EMT certification program. (App. at 324.)

---

[1] See Mullins v. Parkview Hosp., Inc., 830 N.E.2d 45, 50 n.2 (Ind. Ct. App. 2005) ("Intubation is a procedure that is performed as part of general anesthesia to make certain that a sedated person's airway remains open.").

White asked Dr. Carboneau if Ruth was a patient upon whom VanHoey might practice intubation, and Dr. Carboneau said she was. VanHoey tried to intubate Ruth, but failed. After VanHoey's last try, both Dr. Eastlund and Dr. Carboneau saw blood on the tip of VanHoey's laryngoscope. Dr. Carboneau completed the intubation.

Two days after the surgery, tests showed that Ruth's esophagus had been lacerated during intubation and additional surgery was required. An extended period of recuperation followed; Ruth continues to experience pain and inconvenience.

Ruth and her husband, Johnce Mullins, Jr., filed a complaint charging Parkview Hospital, Dr. Eastlund (and his practice, Fort Wayne OB-GYN Consultants, LLC), Dr. Carboneau (and her practice, Preferred Anesthesia Consultants, P.C.), VanHoey, and University of St. Francis of Fort Wayne, Indiana, Inc., with multiple counts of negligence and other misconduct. Pursuant to procedures mandated by the Indiana Medical Malpractice Act, Ind. Code § 34-18-1-1, et. seq. (2004), a duly constituted Medical Review Panel unanimously found that the evidence did not support the conclusion that Dr. Eastlund, Dr. Carboneau, and Parkview Hospital failed to meet the applicable standard of care as charged in the complaint, id. § 34-18-10-22. The defendants then moved for summary judgment, and the trial court granted summary judgment to all defendants.

On the Mullinses' appeal, the Court of Appeals affirmed summary judgment for Parkview Hospital but reversed it in respect to the other defendants. Mullins v. Parkview Hosp., Inc., 830 N.E.2d 45 (Ind. Ct. App. 2005). In brief, the Court of Appeals held that the Mullinses had sufficiently stated a battery claim against VanHoey and Drs. Eastlund and Carboneau and their practices to avoid summary judgment. Id. VanHoey and Dr. Eastlund and his practice (but not Dr. Carboneau and her practice) sought, and we granted, transfer. Mullins v. Anonymous Hosp., Inc., 860 N.E.2d 586 (Ind. 2006) (table). We now affirm summary judgment in favor of Van-Hoey; the remaining portions of the opinion of the Court of Appeals are summarily affirmed pursuant to Ind. Appellate Rule 58(A)(2).

3

**Discussion**

The Mullinses successfully argued to the Court of Appeals that they had alleged a claim of battery against VanHoey that was sufficient to withstand the summary judgment motion. We disagree.

The Restatement (Second) of Torts provides that "[a]n actor is subject to liability to another for battery if (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly results." Restatement (Second) of Torts § 13 (1965). Both VanHoey and the Mullinses agree that VanHoey committed an "act" (attempting the intubation) and that harm (a lacerated esophagus) resulted from the act.

As a preliminary matter, we address consent. With some qualifications, the consent of a plaintiff is a complete defense in an action for battery. 1 Fowler V. Harper, Fleming James, Jr. & Oscar S. Gray, Harper, James and Gray on Torts § 3.10 (3d ed. 2006). Failure to obtain informed consent in the medical context may result in a battery. Id. See also Cacdac v. West, 705 N.E.2d 506, 511-12 (Ind. Ct. App.), trans. dismissed, 726 N.E.2d 306 (Ind. 1999) (table).

Every actor in a medical context, however, is not obligated to obtain consent. We have previously indirectly acknowledged the rule that the burden falls on a physician to obtain a patient's consent for treatment. See Culbertson v. Mernitz, 602 N.E.2d 98, 101 (Ind. 1992) ("It is clear that Indiana must recognize the duty of a physician to make a reasonable disclosure of material facts relevant to the decision which the patient is requested to make. The duty arises from the relationship between the doctor and patient, and is imposed as a matter of law as are most legal duties." (quoting Joy v. Chau, 177 Ind. App. 29, 377 N.E.2d 670, 676-77 (1978), trans. denied.)).[2] In Auler v. Van Natta, cited by VanHoey to support her contention that the duty to obtain consent lay with Drs. Carboneau and Eastlund, the Court of Appeals relied on Culbertson

---

[2] Though one may argue that the burden to obtain informed consent should not fall solely on the physician, most courts continue to hold that it does. See Robert Gatter, The Mysterious Survival of the Policy Against Informed Consent Liability for Hospitals, 81 Notre Dame L. Rev. 1203, 1203-07 (2006).

4

for this same proposition. Auler v. Van Natta, 686 N.E.2d 172, 174 (Ind. Ct. App. 1997), trans. denied, 698 N.E.2d 1187 (Ind. 1998) (table).

Here, Drs. Carboneau and Eastlund obtained consent from Ruth for her surgery in advance of her entering the operating room. After this consent was given, the process for permitting VanHoey to intubate Ruth consisted of White (the "preceptor") preceding VanHoey into the operating room and asking if Ruth was an appropriate subject for intubation. Dr. Carboneau, the anesthesiologist for the surgery, granted permission, and VanHoey entered the operating room and attempted an intubation. When Dr. Carboneau granted VanHoey permission to attempt intubation, VanHoey had no reason to suspect that Ruth had insisted on modifying the standard consent form. VanHoey could properly rely on her previous experience attempting to intubate a patient that day, her preceptor's direction, and Dr. Carboneau's authority as the anesthesiologist for the surgery. We hold that, given VanHoey's status, she was under no obligation to obtain consent herself or inquire into the consent under which Dr. Carboneau was acting. The fact that VanHoey did not personally secure Ruth's consent to her performing the intubation cannot be faulted and, more importantly, does not independently raise VanHoey's harmful touching of Ruth to the level of a battery.

In the absence of any obligation on VanHoey's part to obtain or possess independent, definitive knowledge of Ruth's consent, the Mullinses must establish the traditional elements of battery. VanHoey may indeed have "touched Mrs. Mullins in a harmful and offensive manner without permission," as the Mullinses claim. (Appellant's Br. at 27.) However, even if true, this characterization of events does not satisfy all the elements required to show a battery; at most, the Mullinses have asserted that VanHoey "act[ed]" and that "harmful contact with [Ruth] directly resulted." See Restatement (Second) of Torts § 13. The Mullinses must also show that VanHoey "act[ed] intending to cause a harmful or offensive contact with [Ruth]." Id. (emphasis added).

First, the Mullinses do not allege in their complaint, summary judgment motion, or on appeal that VanHoey touched Ruth with the intent to cause harm.

5

Next, when we accept the facts alleged by the Mullinses and construe the evidence in their favor as the non-moving party, there is still no indication that VanHoey intended to harm Ruth. Here are the facts of VanHoey's involvement as alleged by the Mullinses themselves in their response to VanHoey's motion for summary judgment:

Mrs. Mullins was under sedation and unconscious when the defendant, Larea VanHoey ("VanHoey"), a student studying for certification as an emergency medical technician ("EMT") at the University of St. Francis ("St. Francis"), entered the surgical suite. As part of her certification program, VanHoey was required to successfully complete several intubations on living patients. The day of Mrs. Mullins' surgery, December 4, 2000, was the first time that VanHoey had ever attempted live intubations. . . .

A very loose and informal procedure was followed whereby the Parkview employee, a preceptor, would walk into operating suites prior to the start of a surgical procedure and ask if the patient was a candidate on which the student could practice the intubation technique. If the anesthesiologist agreed, the preceptor and the student would enter the operating room, and the intubation procedure would be attempted by the student learner without the patient's knowledge. Evidence of how loosely the intubation procedures were done is contained on Mrs. Mullins' operative record. As the record notes, and Dr. Eastlund confirmed, there is no listing or notation to show that VanHoey or her Parkview intubation preceptor, Colin White ("White"), were ever present in the room, or that VanHoey assisted the anesthesiologist, Dr. Carboneau.

When VanHoey entered Mrs. Mullins' operating room, she was accompanied by White, the preceptor. White asked Dr. Carboneau if VanHoey could practice the intubation procedure on Mrs. Mullins. Dr. Carboneau consented, and VanHoey made several attempts to intubate Mrs. Mullins using a laryngoscope. Both Dr. Carboneau and Dr. Eastlund saw blood on the tip of the laryngoscope on VanHoey's last attempt.

(App. at 338-39 (citations omitted).)

The Mullinses describe VanHoey's participation in Ruth's surgery as a part of Van-Hoey's training as an EMT; this training required VanHoey to practice and successfully perform intubations. The Mullinses include the following facts related to VanHoey's involvement in Ruth's surgery: (1) Ruth was under anesthesia when VanHoey entered the operating room, (2) the day of Ruth's surgery was the first day VanHoey attempted intubation, (3) the procedure by which patients were selected upon whom students could practice intubation was informal, (4)

6

intubation was attempted under the procedure by a student without the patient's knowledge, (5) VanHoey followed only the informal procedure before attempting to intubate Ruth, (6) Drs. Carboneau and Eastlund saw blood on the laryngoscope after VanHoey's last attempt to intubate Ruth, and (7) no record of VanHoey's participation in Ruth's surgery was made. These factors do not combine to create even a suggestion of intent to harm on VanHoey's part. Rather, they depict a student following a curriculum and the instructions of her superiors. Because there is no genuine issue of material fact as to VanHoey's intent to cause a harmful contact with Ruth, VanHoey was entitled to summary judgment on the Mullinses' battery claim.

## Conclusion

For the reasons discussed <u>supra</u>, we affirm the trial court's grant of summary judgment to VanHoey. In all other respects, we summarily affirm the opinion of the Court of Appeals.

Shepard, C.J., and Dickson, Boehm, and Rucker, JJ., concur.

7