**Charles PRICE, Appellant–Plaintiff,**

v.

**Delmar P. KUCHAES, Appellee–
Defendant.**

**No. 45A04–1007–CT–467.**

Court of Appeals of Indiana.

June 8, 2011.

Transfer Denied October 19, 2011.

See also 505 F.3d 624.

April L. Board, Stanley Kops, Valparaiso, IN, Attorneys for Appellant.

Michael E. O'Neill, Kelly K. McFadden, O'Neill McFadden & Willett LLP, Dyer, IN, Attorneys for Appellee.

## OPINION

ROBB, Chief Judge.

*Case Summary and Issues*

Following the failure of Charles Price's loss of consortium claims, wherein he sought recovery for a vaccine injury to his wife, Price brought this legal malpractice action against Delmar Kuchaes, the attorney who represented him in that litigation. The trial court initially granted partial summary judgment to Price on the issue of liability but denied Price summary judgment on the issue of damages. The following year the trial court reversed course, granting full dispositive summary judgment to Kuchaes based on a theory of judicial estoppel for Price's failure to disclose the malpractice action in his Chapter 13 bankruptcy filing. Price now appeals, and Kuchaes cross-appeals. The parties raise six issues on appeal, of which we find the following three restated issues dispositive: 1) whether Price has standing to maintain this legal malpractice action when it was not initially disclosed in his bankruptcy filing but was later disclosed and the bankruptcy dismissed; 2) whether the trial court properly granted summary judgment to Kuchaes based on judicial estoppel; and 3) whether the trial court correctly decided the merits of Price's legal malpractice claim in its previous grant of partial summary judgment to Price as to Kuchaes's liability.

We conclude Price has standing to pursue this legal malpractice action and that the trial court erred when it granted Kuchaes summary judgment based on judicial estoppel. We further conclude issues of material fact remain such that Price is not entitled to summary judgment as to Kuchaes's liability for malpractice, though the trial court correctly denied Price summary judgment as to damages. We reverse in part, affirm in part, and remand for further proceedings.

### Facts and Procedural History

Price and his wife, Cathy Price, are former clients of Kuchaes. The facts relating to Kuchaes's representation of the Prices in the underlying vaccine litigation were summarized as follows by the United States Court of Appeals for the Seventh Circuit:

On June 10, 1993, Cathy and Charles Price filed suit in Indiana state court against American Cyanamid Company and Lederle Laboratories (a division of American Cyanamid) after Cathy contracted polio from a child who recently had been vaccinated. Cathy's claim was based on product liability, and Charles's claim was for loss of consortium.[1] The summons and complaint were served by certified mail on June 14, 1993, and a return of service was entered for American Cyanamid on June 23, 1993. On June 25, 1993, the manager of American Cyanamid's legal department faxed a letter to plaintiffs' counsel, Delmar Kuchaes, informing him that the National Childhood Vaccine Injury Act, 42 U.S.C. § 300aa–1 et seq., requires that vaccination claims first be brought in the U.S. Court of Federal Claims ("Vaccine Court") pursuant to the federal vaccination compensation program. The letter provided plaintiffs' counsel with the telephone number and mailing address of the federal program and asked that the lawsuit be terminated as required by the Act. After receiving the facsimile letter, plaintiffs' counsel voluntarily dismissed the suit that same day, before either defendant filed an appearance or responsive pleading. Plaintiffs' counsel sent American Cyanamid a copy of the dismissal order, along with a letter stating that the suit had been "discontinue[d], or non-suit[ed]."

Over the next few years, the Prices pursued their claims in the Vaccine Court, where they ultimately learned that Charles's derivative claim was not compensable under the Vaccine Act. Accordingly, in March 1998, Charles voluntarily dismissed his claim in the Vaccine Court. Cathy subsequently obtained a judgment from the Vaccine Court in excess of $1 million. On July 17, 1998, the Prices moved to reinstate their state-court action, but they did not provide any notice of that motion to the defendants. The state court reinstated the case on July 20, 1998, again without notice to either defendant. For the next year and a half, no effort was made to notify the defendants of the reinstated state-court proceedings.

On April 11, 2000, Charles Price filed motions for default judgment against the defendants, stating that process had been served in June 1993 and the defendants had subsequently failed to appear or respond; the motions said nothing about the circumstances of the voluntary dismissal and were not served on the defendants. The court entered default judgments against the defendants on April 26, 2000, and scheduled an eviden-

---

1. The Prices also filed a similar suit against the physicians and medical practice allegedly at fault in administering the vaccine. That suit was voluntarily dismissed and no attempt was made to reinstate it.

tiary hearing on damages. At that point, the court (*not* Price's attorney) forwarded a notice of the damages hearing to Lederle Laboratories at the address on the original summons served in 1993. On July 7, 2000, the notice was returned to sender, stating "no such office in state." As it turned out, the address on the original summons had incorrectly attributed Lederle's New York address to New Jersey, but the post office had delivered it to the New York address anyway, presumably based on the New York zip code. Price's attorney made no attempt to notify Lederle or American Cyanamid of the reinstated proceedings, the default judgment motions, or the damages hearing. The hearing went forward on June 16, 2000, and the court awarded $5 million to Charles Price.

The default judgments languished in state court for approximately four years until Price initiated garnishment proceedings on June 1, 2004. At that time, Price provided the state court with a new address at which to serve the defendants, that of the registered agent for American Cyanamid and Lederle. Process for the garnishment proceedings was served on June 14, 2004, marking the first time since June 23, 1993, that the defendants received any notice of the proceedings that were taking place in Indiana state court.

On June 22 the defendants jointly filed a notice of removal to federal court and the case was removed.[2] Price challenged the removal as untimely and sought a remand to state court. The district court denied remand, holding that the removal was timely because the defendants had no notice that the previously dismissed case had been reinstated until a week before they sought removal.

The district court then vacated the default judgments due to Price's failure to comply with notice requirements under Indiana law. The defendants moved for summary judgment on statute of limitations grounds; the district court granted the motion, holding that the two-year statute of limitations had expired during the intervening years between the voluntary dismissal and the reinstatement of the lawsuit.

*Price v. Wyeth Holdings Corp.,* 505 F.3d 624, 626–28 (7th Cir.2007) (emphasis in original; original footnotes omitted); Appendix to Appellant's Brief ("App.") at 955–58.

On May 9, 2006, approximately two months after the district court decision granting summary judgment to the vaccine defendants, Price, by new counsel, filed this legal malpractice action against Kuchaes. Price alleged that he suffered monetary damages as a proximate result of Kuchaes's failure to timely pursue the loss of consortium claim against the vaccine defendants. Meanwhile, Kuchaes initiated the appeal of the district court decision and argued the appeal before the Seventh Circuit on December 4, 2006.

On April 24, 2007, the Prices filed a voluntary petition for Chapter 13 bankruptcy in the United States Bankruptcy Court for the Eastern District of Tennessee, where they resided. In their bankruptcy petition and schedules, the Prices did not list as potential assets either the malpractice action against Kuchaes or the vaccine litigation that remained pending on appeal. On June 18, 2007, a meeting of the Prices' creditors was held, and on July 17, 2007, an order confirming the Chapter 13 plan was entered.

On September 20, 2007, the Seventh Circuit issued its opinion, affirming summary

---

**2.** Removal was based on federal diversity jurisdiction.

judgment for the vaccine defendants with the following summation of its holding:

Price's attorney takes the extraordinary position that his ex parte reinstatement of the lawsuit was perfectly appropriate under Indiana law. It certainly was not. The defendants were entitled to notice of the motion to reinstate and all subsequent proceedings under Indiana's trial procedure rules; ex parte conduct of this sort also violates Indiana's *Rules of Professional Conduct* for attorneys. We affirm the orders of the district court and order Price's attorney to show cause why he should not be sanctioned for filing this frivolous appeal. We also direct the clerk of this court to transmit a copy of this opinion to the Indiana Supreme Court Disciplinary Commission for any action it deems appropriate.

505 F.3d at 626. The Seventh Circuit also explained, regarding the statute of limitations issue:

Price ... contends that the statute of limitations was tolled when he filed with the Vaccine Court in July 1994. But this was five months after the two-year limitations period had expired (the claim accrued no later than February 3, 1992). Because no intervening occurrence tolled the two-year statute of limitations, the district court properly concluded that his claim was barred under Indiana law.

*Id.* at 633.

On or about June 2, 2008, Price responded to interrogatories from Kuchaes in the malpractice action and disclosed his pending bankruptcy. On June 26, 2008, Price was deposed and again acknowledged that he had filed for bankruptcy in 2007.

In December 2008, Price and Kuchaes filed cross-motions for summary judgment in the malpractice action and accompanying designations of evidence. Price argued that he was entitled to judgment as a matter of law because the entry of the polio vaccine into Cathy Price's body without her consent constituted a battery under Indiana law and that he was entitled to $5 million in damages based on the previously vacated default judgment "that finds this amount to be fair and reasonable." App. at 985. Kuchaes argued he was entitled to summary judgment as to the proximate cause element of the malpractice case because Price had not shown a likelihood of prevailing on the merits of the vaccine litigation considered as a products liability action. Kuchaes also argued he was entitled to summary judgment on a judicial estoppel theory, i.e., that Price was estopped from pursuing the malpractice claim because he knowingly failed to disclose the claim as a potential asset when filing for bankruptcy.

On January 20, 2009, the Prices amended their bankruptcy schedule of assets to include the malpractice action. On February 25, 2009, the bankruptcy court entered the following order:

### AGREED ORDER MODIFYING CHAPTER 13 PLAN

Comes Gwendolyn M. Kerney, the Chapter 13 Trustee, and Alan C. Lee, attorney for the debtors and announces that they have reached the following agreement:

1) That any monies received by the debtors' regarding the pending malpractice claim shall be paid into the plan except to the extent for those sums reasonably necessary for the support and maintenance of the debtors or dependents despite any claimed exemption; and,

2) This Agreed Order does not adversely affect the rights of any creditor.

*Id.* at 550. Thereafter, Kuchaes's counsel contacted the bankruptcy trustee in an attempt to settle the claim.

On May 28, 2009, Price filed an additional motion for partial summary judgment in the malpractice action. Price's motion addressed the merits of the underlying vaccine litigation and asked the trial court to give preclusive effect to a judgment rendered against American Cyanamid in a Missouri court.

On July 8, 2009, the Prices moved the bankruptcy court to dismiss their bankruptcy. On July 10, 2009, the bankruptcy court entered the following order:

> Upon motion of the above Debtors filed July 8, 2009, pursuant to 11 U.S.C. § 1307(b), seeking dismissal of this Chapter 13 case after confirmation of a plan; it appearing this case has not been previously converted under §§ 706, 1112, or 1208, the court directs the following: 1. The Debtors' Chapter 13 case is DISMISSED.
>
> 2. The trustee shall disburse the balance of funds on hand in accordance with the Debtors' confirmed plan. (11 U.S.C. § 1326(c)).
>
> 3. The trustee, upon making the aforesaid disbursements, will file her final account.

*Id.* at 552.

On July 6, 2009, a hearing was held on Price's motions for summary judgment and partial summary judgment. On August 17, 2009, the trial court granted partial summary judgment in favor of Price as to Kuchaes's liability for malpractice but denied summary judgment on the amount of damages. The trial court concluded that Cathy Price's vaccine injury was a battery under Indiana law and that Kuchaes "failed to act as a reasonably prudent lawyer, which failure was the proximate cause of damages incurred by [Price], and [Kuchaes] is liable to [Price] for malpractice." *Id.* at 562. The trial court also denied Kuchaes's motions to strike much of Price's designated evidence. The trial court then granted Kuchaes's request to certify its August 17, 2009 order for interlocutory appeal, but this court declined to accept jurisdiction of the interlocutory appeal.

Thereafter, Kuchaes requested that the trial court set for hearing his pending motion for full dispositive summary judgment based on, among other grounds, judicial estoppel. Following briefing and a hearing, on July 2, 2010, the trial court granted Kuchaes's dispositive motion for summary judgment.

Price now appeals, and Kuchaes cross-appeals.[3] Additional facts will be supplied as necessary.

### Discussion and Decision [4]

#### I. Standard of Review

We review the grant or denial of summary judgment de novo. *Tri–Etch, Inc. v. Cincinnati Ins. Co.,* 909 N.E.2d 997, 1001 (Ind.2009). We apply the same standard as the trial court: summary judgment is proper if the designated evidence shows there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Dreaded, Inc. v. St. Paul Guardian Ins. Co.,* 904 N.E.2d 1267, 1269–

---

**3.** Both parties filed motions for oral argument, which we have denied by separate order.

**4.** Kuchaes argues that Price's opening brief fails to comply with the Rules of Appellate Procedure and therefore should be stricken.

We decline to do so, finding that the defects Kuchaes points out concern the merits of Price's arguments and do not amount to a wholesale failure to accurately cite the record and supporting law.

70 (Ind.2009). In making this determination, we construe the evidence in a light most favorable to the non-moving party and resolve all doubts as to the existence of a genuine factual issue against the moving party. *N. Ind. Pub. Serv. Co. v. Bloom,* 847 N.E.2d 175, 180 (Ind.2006). We will affirm the trial court's grant of summary judgment if it is sustainable on any theory or basis in the record. *Beck v. City of Evansville,* 842 N.E.2d 856, 860 (Ind.Ct.App.2006), *trans. denied.* The fact that parties have filed cross-motions for summary judgment does not alter our standard of review, as we consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law. *T–3 Martinsville, LLC v. U.S. Holding, LLC,* 911 N.E.2d 100, 109 (Ind.Ct.App.2009), *trans. denied.*

## II. Kuchaes's Motion for Summary Judgment

As the trial court granted Kuchaes's dispositive motion for summary judgment, we consider as the initial matter whether Kuchaes is entitled to summary judgment.

### A. Standing

■ Because we may affirm a trial court's summary judgment on any theory or basis in the record, we first consider the parties' arguments as to whether Price has standing to maintain this legal malpractice action. We begin by noting principles of bankruptcy law under which, while Price's bankruptcy was pending, the malpractice claim against Kuchaes belonged to the trustee and not to Price. "The Bankruptcy Code provides that the bankruptcy estate consists of all legal or equitable interests of the debtor in property as of the commencement of the case." *Hammes v. Brumley,* 659 N.E.2d 1021, 1025 n. 4 (Ind. 1995) (citing 11 U.S.C. § 541(a)(1)). "Once a debtor files bankruptcy, any unliquidated lawsuits, including any personal injury cause of action, become part of the bankruptcy estate." *Id.* "Unless scheduled by the debtor and abandoned by the trustee in bankruptcy, such rights of action may no longer be pursued by the debtor." *Id.* "[E]ven if scheduled, the debtor is divested of standing to pursue any cause of action and suit must be brought by the trustee." *Id.* at 1026. This is so even after the bankruptcy is completed and the debtor's debts are discharged by the bankruptcy court. *See United States ex rel. Gebert v. Transp. Admin. Servs.,* 260 F.3d 909, 912–13 (8th Cir.2001); *Hammes,* 659 N.E.2d at 1025–26 (stating debtor-plaintiffs' negligence actions violated the above bankruptcy principles; personal injury causes of action existed when bankruptcies were filed yet were not scheduled as assets, and plaintiffs filed their actions after bankruptcy court discharged their debts); *cf. Cannon–Stokes v. Potter,* 453 F.3d 446, 448 (7th Cir.2006) (stating under the doctrine of judicial estoppel that "a debtor in bankruptcy who denies owning an asset, including a chose in action or other legal claim, cannot realize on that concealed asset after the bankruptcy ends"), *cert. denied,* 549 U.S. 1099, 127 S.Ct. 838, 166 L.Ed.2d 671 (2006). If, however, the claim at issue is both (1) disclosed and (2) abandoned by the trustee, the debtor may pursue the claim. *Robson v. Texas E. Corp.,* 833 N.E.2d 461, 474 (Ind.Ct.App.2005), *trans. denied.*

■ Price did ultimately disclose to the bankruptcy court, albeit not in his initial filing, his malpractice claim against Kuchaes. Yet Price does not allege, and the record does not indicate, that the trustee abandoned the claim. The present case, however, involves the different scenario where the Price bankruptcy has been dismissed rather than completed. Thus we distinguish this case from *Cannon–Stokes, Gebert,* and *Hammes,* which addressed situations where a debtor sought to pursue

an unscheduled claim after having debts discharged by the bankruptcy court.

In *Shewmaker v. Etter*, this court, and our supreme court by adoption, concluded that the dismissal of the plaintiff's bankruptcy, after the bankruptcy court permitted him to amend his schedule to include a previously undisclosed personal injury cause of action, returned the cause of action to him, and therefore the plaintiff was not divested of standing. 644 N.E.2d 922, 927–28 (Ind.Ct.App.1994) (citing 11 U.S.C. § 349(b)), *opinion expressly adopted, Hammes,* 659 N.E.2d 1021 (Ind.1995). Like the plaintiff in *Shewmaker*, Price was permitted by the bankruptcy court to amend his schedule to include the previously undisclosed malpractice claim. Then, as indicated by the bankruptcy court's order, Price's bankruptcy was dismissed pursuant to 11 U.S.C. section 1307(b). App. at 552. While section 1307(b) has no language setting forth the effect of a dismissal, section 349 of the Bankruptcy Code provides that "[u]nless the court, for cause, orders otherwise, a dismissal of a case other than under section 742 of this title ... (3) revests the property of the [bankruptcy] estate in the entity in which such property was vested immediately before the commencement of the [bankruptcy] case." 11 U.S.C. § 349(b). "The word 'entity' means debtor." *Shewmaker,* 644 N.E.2d at 928 (citing *In re Baylies,* 114 B.R. 324 (Bankr. D.D.C.1990)). Thus, the bankruptcy court's order dismissing Price's bankruptcy had the effect of returning the malpractice action from the bankruptcy estate to Price. *See Cent. J. Freightliner, Inc. v. Freightliner Corp.,* 987 F.Supp. 289, 294 (D.N.J.1997) (stating that "dismissal of a bankruptcy case essentially restores the parties to the position they assumed prepetition"); *cf. Kunica v. St. Jean Fin., Inc.,* 233 B.R. 46, 53–54 (S.D.N.Y.1999) (addressing scenario where debtor's claims were never disclosed at any time during bankruptcy and concluding that dismissal of bankruptcy did not then restore debtor's standing to pursue such claims).

In sum, Price was divested of standing to pursue the malpractice action while his bankruptcy was pending. Yet the dismissal of his bankruptcy in July 2009, before the trial court ruled on either party's motion for summary judgment, returned ownership of the action to him. Therefore, he now has standing to pursue the action against Kuchaes, and the trial court's grant of summary judgment to Kuchaes cannot be sustained on the basis of standing.

### B. Judicial Estoppel

The trial court granted summary judgment to Kuchaes based on his argument that Price's malpractice action was barred by the doctrine of judicial estoppel. It is a basic tenet of federal bankruptcy law that "all assets of the debtor, including all pre-petition causes of action belonging to the debtor, are assets of the bankruptcy estate that must be scheduled for the benefit of creditors." *Kunica,* 233 B.R. at 52. Under state law, the doctrine of judicial estoppel can apply where a bankruptcy debtor fails to schedule or otherwise disclose a cause of action to the bankruptcy court and later seeks to recover on that cause of action in state court. *See Robson,* 833 N.E.2d at 466.

This court has previously explained:

Judicial estoppel is a judicially created doctrine that seeks to prevent a litigant from asserting a position that is inconsistent with one asserted in the same or a previous proceeding. Judicial estoppel is not intended to eliminate all inconsistencies; rather, it is designed to prevent litigants from playing 'fast and loose' with the courts. The primary purpose of judicial estoppel is not to protect liti-

gants but to protect the integrity of the judiciary. The basic principle of judicial estoppel is that, absent a good explanation, a party should not be permitted to gain an advantage by litigating on one theory and then pursue an incompatible theory in subsequent litigation. Judicial estoppel only applies to intentional misrepresentation, so the dispositive issue supporting the application of judicial estoppel is the bad-faith intent of the litigant subject to estoppel.

... In *Robson*, we adopted a burden shifting approach for assessing whether to apply the doctrine of judicial estoppel to causes of action not scheduled as an asset in bankruptcy proceedings. An inference of bad faith arises when the party asserting judicial estoppel demonstrates that a debtor-plaintiff had knowledge of an unscheduled claim and motive for concealment in the face of a duty to disclose. If the party asserting judicial estoppel establishes knowledge of a claim and motive for concealment, the debtor-plaintiff then has the burden of coming forth with evidence indicating that the nondisclosure was made in good faith.... In applying the burden-shifting test, it is important to remember that the ultimate purpose of the test is to determine the actual presence of bad faith. When considering the applicability of judicial estoppel, we must give due consideration to all of the circumstances of a particular case. Judicial estoppel is not meant to be a technical defense for litigants seeking to derail potentially meritorious claims. When determining whether judicial estoppel is applicable, the dispositive question is not whether the trustee was aware of the unscheduled claim; the dispositive question is whether the debtor-plaintiff was playing fast and loose with the courts.

*Morgan County Hosp. v. Upham*, 884 N.E.2d 275, 280 (Ind.Ct.App.2008) (quotations and citations omitted), *trans. denied.*

Price filed the malpractice action against Kuchaes in May 2006. In April 2007, Price failed to list the malpractice action, or the underlying vaccine litigation that remained pending on appeal, in his schedule of assets submitted to the bankruptcy court. In July 2007, the bankruptcy court entered an order confirming Price's Chapter 13 repayment plan. In September 2007, the Seventh Circuit issued its opinion affirming judgment for the vaccine defendants. In December 2008, Price and Kuchaes filed cross-motions for summary judgment in the malpractice action. In January 2009, Price amended his bankruptcy schedule of assets to include the malpractice action. Then in February 2009, the bankruptcy court entered an order reflecting that Price and the trustee agreed any money received from the malpractice action would be paid into the plan and also agreed such an order did not adversely affect the rights of any creditor. Price's bankruptcy was dismissed, on Price's motion, in July 2009.

■ We acknowledge it is troubling that Price did not disclose the malpractice action in his 2007 bankruptcy filing. Price had knowledge of the claim because the complaint had been filed in May 2006. Looking at the facts objectively, rather than attempting to gauge Price's subjective motivation which is not revealed by the record, Price had a motive to conceal the malpractice action because if the bankruptcy trustee had remained unaware of the claim, Price would have been able to retain any proceeds thereof instead of having them paid into the Chapter 13 plan. Price may also have been able to obtain a more favorable Chapter 13 plan with the trustee and creditors unaware of the potential value of the malpractice action.

Only after Kuchaes filed his motion for summary judgment, arguing that Price's failure to disclose the malpractice action in his bankruptcy estopped him from pursuing it, did Price amend his bankruptcy schedule to include the malpractice action.

Notwithstanding these concerns, it is significant that the bankruptcy court, in its February 2009 order, approved the agreement of Price and the trustee that any proceeds from the malpractice action would be paid into the Chapter 13 plan and that such an agreement did "not adversely affect the rights of any creditor." App. at 550. In other words, the bankruptcy court determined that the Price bankruptcy could proceed with the trustee's knowledge of the malpractice action and that such modification of the Chapter 13 plan was not to the prejudice of the Prices' creditors. Given the supremacy of federal law and the exclusive jurisdiction of the federal bankruptcy court in these matters, we may not and will not second-guess the bankruptcy court's reasoning in entering the February 2009 order. *See Shewmaker,* 644 N.E.2d at 927 (applying the principle that "United States Bankruptcy Court rulings upon bankruptcy issues are controlling upon state court issues pursuant to the Supremacy Clause").

The dispositive question, then, is whether permitting Price to continue with the malpractice action would amount to letting him "play[ ] fast and loose with the courts." *Morgan County Hosp.,* 884 N.E.2d at 280. In making this determination, we "must give due consideration to all of the circumstances of [this] particular case." *Id.* The bankruptcy court in its February 2009 order effectively determined that Price's nondisclosure of the malpractice action was cured by his later disclosure of it, allowing the bankruptcy to proceed with the trustee's knowledge and ownership of the claim. Thus the present case is akin to *Shewmaker,* where this court, and our supreme court by adoption, held judicial estoppel was inappropriate because the debtor-plaintiff "presented his omission to the bankruptcy court and was allowed to cure it" and "[t]hus, the bankruptcy court did not rely upon the faulty asset schedule in making its final decision." 644 N.E.2d at 931. In addition, and akin to the facts in *Shewmaker,* the dismissal of Price's bankruptcy in July 2009 had the effect of returning ownership of the malpractice action from the bankruptcy estate to Price. From then onward, Price's initial nondisclosure was a moot point because there was no longer any obligation for the claim to be scheduled for the benefit of creditors. In these circumstances, we cannot perceive how allowing Price's malpractice action to continue would permit him to play fast and loose with the courts, that is, to prevail twice or otherwise gain an unfair advantage in litigating upon inconsistent theories.

■ Further, "judicial estoppel is an equitable doctrine." *Morgan County Hosp.,* 884 N.E.2d at 283. We and other courts have recognized that it is not equitable to apply the doctrine in a manner that harms creditors of the plaintiff who would ultimately benefit from the plaintiff's ability to pay them should the plaintiff recover in his or her malpractice or other injury action. *Id.* (quoting *Biesek v. Soo Line R.R. Co.,* 440 F.3d 410, 413 (7th Cir.2006) for the proposition that "[t]he debtor's nondisclosure in bankruptcy harmed his creditors by hiding assets from them. Using this same nondisclosure to wipe out his injury claim would complete the job by denying creditors even the right to seek some share of the recovery" (alterations deleted)). In *Cannon–Stokes,* 453 F.3d at 449, the Seventh Circuit applied judicial estoppel when the debtor-plaintiff obtained the benefit of a bankruptcy dis-

charge, never filed amended schedules or moved to reopen the bankruptcy, and then sought to "win a second case" by pursuing her unscheduled claim "for her personal benefit." Here by contrast, because Price's bankruptcy was dismissed, his debts have not been discharged and any recovery Price may obtain in this malpractice action could inure to the benefit of his creditors. Conversely, applying judicial estoppel against Price in this case could have negative consequences for Price's creditors by denying them an opportunity to recoup their losses should Price prevail in this action. *See Morgan County Hosp.,* 884 N.E.2d at 283.

▪ We also point out that Kuchaes neither alleges nor shows he relied upon or was prejudiced by Price's failure to timely disclose the malpractice action in his bankruptcy. Rather, from Kuchaes's perspective, Price's bankruptcy and the malpractice action were wholly unrelated litigation. As we have observed, judicial estoppel "is not meant to be a technical defense for litigants seeking to derail potentially meritorious claims." *Id.* at 280. And in these circumstances, equitable estoppel is inapplicable. *See Wabash Grain, Inc. v. Smith,* 700 N.E.2d 234, 237 (Ind.Ct.App. 1998) (setting out the elements of equitable estoppel), *trans. denied; Shewmaker,* 644 N.E.2d at 930 n. 11 ("[A]n essential element of equitable estoppel is reliance upon the misrepresentations. Accordingly, a party who was not a creditor in the bankruptcy action and who did not rely upon the asset schedule cannot raise equitable

estoppel as a bar to a subsequent suit." (citation omitted)).

For the above reasons, we conclude as a matter of law that Price's malpractice action is not barred by judicial estoppel and Kuchaes is not entitled to summary judgment on such a basis. The parties' arguments and designated evidence reveal no other basis upon which the trial court's grant of summary judgment to Kuchaes can be sustained.[5] We therefore reverse the trial court's July 2, 2010 grant of summary judgment to Kuchaes and remand this case for further proceedings consistent with our resolution of the additional issues addressed below.

### III. Price's Motion for Summary Judgment

#### A. Malpractice Liability

On cross-appeal Kuchaes challenges the trial court's conclusion—no longer moot because of our reversal of the trial court's grant of dispositive summary judgment to Kuchaes—that Price was otherwise entitled to summary judgment as to Kuchaes's liability for legal malpractice. Specifically, Kuchaes argues that the trial court, looking to the merits of the underlying vaccine litigation, misapplied Indiana law regarding battery and collateral estoppel in concluding Kuchaes was liable for malpractice.[6]

This court recently restated the elements of legal malpractice: "To prove a legal malpractice claim, a plaintiff must establish: 1) employment of the attorney (duty); 2) failure of the attorney to exer-

---

5. As explained below in Part III, relative to Price's motion for summary judgment, we conclude that issues of material fact remain as to the merits of Price's malpractice claim. In short, the designated evidence does not allow for summary judgment in favor of Price or in favor of Kuchaes.

6. Kuchaes also argues the trial court committed procedural error in ruling on Price's motions for summary judgment and partial summary judgment and erred in denying Kuchaes's motions to strike. Because we reverse on the merits of the trial court's August 17, 2009 summary judgment order, we need not address Kuchaes's procedural and evidentiary arguments.

cise ordinary skill and knowledge (breach); 3) proximate cause (causation); and 4) loss to the plaintiff (damages)." *Flatow v. Ingalls*, 932 N.E.2d 726, 729 (Ind.Ct.App. 2010), *trans. denied*. "Proximate cause requires the plaintiff to show at a minimum that the outcome of the underlying litigation would have been more favorable but for the attorney's negligence. Such proof typically requires a 'trial within a trial.' " *Id.* (citations omitted).

Kuchaes does not appear to dispute that Price has established the first and second elements of his malpractice claim. Kuchaes was Price's attorney in the underlying vaccine litigation, and the procedural history of that litigation as recounted in the Seventh Circuit's opinion shows multiple procedural missteps by Kuchaes leading to Price's ultimate failure to recover on his loss of consortium claims. In short, after the case was removed to federal court and the prior state court default judgment vacated, the vaccine manufacturer defendants sought and were granted summary judgment on statute of limitations grounds. In addition, Kuchaes made no attempt to reinstate the claim against the medical defendants before the statute of limitations expired. Kuchaes contests the third element, proximate cause. The question in resolving Price's motion for summary judgment thus becomes whether, if Kuchaes had properly filed and pursued the loss of consortium claims against the various defendants, the designated evidence establishes as a matter of law that Price would have prevailed.

█ We initially note that a loss of consortium claim is derivative of the injured spouse's personal injury claim. *Durham ex rel. Estate of Wade v. U–Haul Int'l*, 745 N.E.2d 755, 764 (Ind.2001). A plaintiff seeking to recover for loss of consortium must prove all elements of a tort against the injured spouse. *Mayhue v.*

*Sparkman*, 653 N.E.2d 1384, 1386 (Ind. 1995). Here, the parties disagree as to what tort was implicated by Cathy Price's vaccine injury: Price's motion for summary judgment argued, and the trial court concluded, Cathy suffered a battery under Indiana law, whereas Kuchaes's motion for summary judgment argued recovery was precluded under products liability law.

Kuchaes filed two loss of consortium claims on behalf of Price in June 1993, under separate cause numbers. The first was against the vaccine manufacturers American Cyanamid Company and Lederle Laboratories, a division of American Cyanamid. The second was against Drs. Farida I. Chua and Constancio Acosta and Chua Medical Corporation, who allegedly, on June 11, 1991, administered the vaccine to B.R. B.R. soon thereafter was a guest in the Prices' home and allegedly transmitted polio to Cathy. Price's legal malpractice complaint alleged that Kuchaes committed malpractice in failing to properly pursue the loss of consortium claim against the vaccine manufacturers. In his motion for summary judgment and on appeal, Price also alleges that Kuchaes committed malpractice in failing to reinstate or otherwise pursue the loss of consortium claim against the physicians and medical practice. We will address each loss of consortium claim separately.

1. Claim Against Vaccine Manufacturers

█ The loss of consortium claim against the vaccine manufacturers was necessarily a products liability claim because it alleged "physical harm caused by a product." Ind.Code § 34–20–1–1. The substantive theory of battery could not apply because battery is an intentional tort and requires the intent to cause a harmful or offensive contact with the plaintiff. *Mullins v. Parkview Hosp., Inc.*, 865 N.E.2d 608, 610 (Ind.2007) (stating one is liable for battery who "(a) acts intending to

cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly results" (quotation omitted)). In *Mullins*, our supreme court affirmed summary judgment in favor of a medical trainee on the patient's battery claim, even though the patient had refused consent to treatment by trainees, because the trainee was not obligated to seek the unconscious patient's consent and there was no evidence that the trainee intended to harm the patient. *Id.* at 611–12. Thus it is not enough that, as the trial court reasoned, the contact of the vaccine with Cathy was unconsented to by her.[7] The vaccine manufacturers could not have intended to cause any contact, let alone harmful contact, of the vaccine with Cathy, who by tragic happenstance came into contact with vaccine administered to a third party. Rather, the vaccine manufacturers could have been liable only under a theory of negligent or strict products liability. *See* Ind.Code § 34–20–2–1 *et seq.*

 To prove a claim of products liability against the vaccine manufacturers, Price would have needed evidence that the vaccine was "defective" and "unreasonably dangerous" under Indiana law. Ind.Code § 34–20–2–1. Price also would have needed to prove that the defect was a proximate cause of Cathy's vaccine injury. *See Kovach v. Caligor Midwest*, 913 N.E.2d 193, 197 (Ind.2009) (noting that negligent

and strict products liability claims require proof that the injury sustained was proximately caused by the alleged product defect).

In initially obtaining a default judgment on Price's behalf, Kuchaes did not present any evidence that the vaccine was defective or unreasonably dangerous.[8] Price, in support of his summary judgment motion in the malpractice action, attempted to show that the vaccine to which Cathy was exposed was not properly tested by the vaccine manufacturers as required by federal regulations. As part of this attempt, Price via a separate motion for partial summary judgment asked the trial court to give preclusive effect to the case of *Strong v. Am. Cyanamid Co.*, 261 S.W.3d 493 (Mo.Ct.App.2007). The *Strong* court affirmed a jury verdict against American Cyanamid by concluding the plaintiff presented sufficient evidence to support a finding, under Missouri law, that the polio vaccine was defective for failure to perform proper testing and such failure proximately caused the plaintiff's vaccine injury. *Id.* at 505–07.

 Collateral estoppel does not allow for giving the *Strong* case preclusive effect because the present case does not involve an identical legal or factual issue. "Collateral estoppel bars the subsequent litigation of a fact or issue that was necessarily adjudicated in a former lawsuit if the same fact or issue is presented in the subsequent lawsuit." *Indianapolis*

---

7. Consent is, with some qualifications, a complete defense to the tort of battery. *Mullins*, 865 N.E.2d at 610. Thus, while the presence of consent generally negates a claim of battery, the absence of consent is not per se sufficient to establish battery.

8. As the Seventh Circuit held, the default judgment was procedurally erroneous and was properly vacated when removed to federal court.

The vaccine court, in awarding Cathy compensation for her injury, determined that she contracted paralytic polio from contact with B.R. However, the vaccine court did not make any finding of fault or liability on the part of any of the manufacturers or physicians, who were not parties in the vaccine court. Rather, the vaccine court proceedings were between the Prices and the Secretary of Health and Human Services.

*Downs, LLC v. Herr,* 834 N.E.2d 699, 704 (Ind.Ct.App.2005), *trans. denied.* "Collateral estoppel does not extend to matters which were not expressly adjudicated and can be inferred only by argument." *Pritchett v. Heil,* 756 N.E.2d 561, 565 (Ind. Ct.App.2001). As for its legal conclusions, the *Strong* court applied Missouri's products liability law, not Indiana law. The facts that Price seeks to establish through the *Strong* case involve the complex lineage of the virus strains allegedly used to produce all of the American Cyanamid polio vaccine after a certain date, inclusive of both the vaccine that injured the *Strong* plaintiff and the vaccine that injured Cathy. Price thus appears to contend that the same evidence the *Strong* court accepted as showing the virus strains were not properly tested also establishes a lack of proper testing as to the vaccine that ultimately injured Cathy. However, the form and content of Price's thirty-four-page motion shows that such a contention, if true, can be inferred only by argument and was not expressly adjudicated in *Strong.*[9] Therefore, collateral estoppel does not apply and the trial court erred in granting Price's motion to accept *Strong* as preclusive.[10]

■■■ We conclude, contrary to the trial court, that the designated evidence fails to negate two issues of material fact as to the underlying products liability claim against the vaccine manufacturers. First, the parties designated conflicting expert testimony as to whether the vaccine that injured Cathy was defective and unreasonably dangerous. Price designated the affidavit of Dr. Viera Scheibner, who opined that the vaccine administered to B.R. was defective and unreasonably dangerous to persons, including Cathy, coming into contact with its recipients. Kuchaes designated the affidavit of Arthur Elliott, Ph.D., who opined, despite acknowledging a lack of direct evidence, that the vaccine administered to B.R. "was manufactured, tested, released and sold properly in a manner consistent with all applicable federal standards and regulations" and therefore was not defective or unreasonably dangerous. Appellee/Cross–Appellant's Supplemental Appendix at 194; *see* Ind.Code § 34–20–5–1 (providing a rebuttable presumption that a product is not defective if, when sold, it complied with applicable federal or state standards or regulations).

Second, Price did not designate any evidence, expert or otherwise, that the defective aspect of the vaccine proximately caused Cathy's injury, as opposed to her injury resulting from dangers inherent in even a non-defective vaccine. *Cf. Am. Cyanamid Co. v. St. Louis Univ.,* 336 F.3d 307, 310 (4th Cir.2003) (affirming summary judgment in favor of American Cyanamid because there was no evidence that injured party would not have contracted polio or would have contracted a less severe case

---

9. For instance, Price's motion refers to Lot # 634B4 as the specific vaccine that injured Cathy, yet the facts recited by the *Strong* court do not refer to this particular lot number.

10. We note the additional difficulty that Kuchaes is not American Cyanamid and therefore the requirement of an identical party sought to be estopped is absent from the present malpractice action. "Regardless of whether the use [of collateral estoppel] is termed 'offensive' or 'defensive,' collateral estoppel is asserted against a party who had a

prior opportunity to litigate an issue and lost." *Tofany v. NBS Imaging Sys., Inc.,* 616 N.E.2d 1034, 1037 (Ind.1993). Looking to substance over form, however, we might interpret Price's argument as a contention that if his loss of consortium claim against American Cyanamid had been properly pursued, then collateral estoppel would have precluded the company from contending that the vaccine Cathy was exposed to was not defective. For the reasons explained above, we disagree with Price's argument thus stated.

had the vaccine complied with applicable regulations), *cert. denied,* 540 U.S. 1105, 124 S.Ct. 1045, 157 L.Ed.2d 889 (2004). Neither did Kuchaes designate evidence that any defect in the vaccine was not a proximate cause of Cathy's injury. As a result, the designated evidence does not negate this issue of material fact in the underlying products liability claim against the vaccine manufacturers for loss of consortium.

For these reasons, Price has not shown that if Kuchaes had properly pursued the loss of consortium claim against the vaccine manufacturers he would have prevailed, and the trial court erred to the extent it granted Price summary judgment on this basis.

### 2. Claim Against Medical Defendants

■■■ The loss of consortium claim against the medical defendants needed to rely on a theory of medical negligence. The medical defendants were not alleged to have had any direct contact with Cathy—who was not their patient—so as explained above, the intentional tort of battery could not have applied. The cases Price cites indicating that physicians may be liable for battery involve liability of a physician to a patient, not to third parties. *See Singh v. Lyday,* 889 N.E.2d 342, 360 (Ind.Ct.App.2008), *trans. denied; Cacdac v. West,* 705 N.E.2d 506, 511–12 (Ind.Ct. App.1999), *trans. dismissed.* To prove a claim of medical negligence, Price would have needed to establish that the physicians had a duty to Cathy, that their actions or omissions breached that duty, and that the breach was a proximate cause of Cathy's vaccine injury. *See Mayhue,* 653 N.E.2d at 1386 (setting forth the elements of medical negligence).

Price argued and the trial court agreed that the physicians failed to furnish to the mother of B.R. an information sheet on the polio vaccine and that their failure to do so violated federal law. Price's designated evidence includes the affidavit of B.R.'s mother, who averred that the physicians gave her no warnings or instructions regarding the potential transmission of polio and that if such warnings had been given, she "would have not allowed other people to come into close contact with [B.R.]." App. at 686. Price also cited 42 U.S.C. section 300aa–26, which required that by December 1988 the Secretary of Health and Human Services "develop and disseminate vaccine information materials for distribution by health care providers" outlining benefits and risks of the polio vaccine, and that starting six months after publication of such materials,

> each health care provider who administers a vaccine ... shall provide to the legal representatives of any child or to any other individual to whom such provider intends to administer such vaccine a copy of the information materials ... supplemented with visual presentations or oral explanations, in appropriate cases.

42 U.S.C. § 300aa–26(d). Price argued that the physicians' omission to provide such information to the mother of B.R. amounted to negligence per se. *See Plesha v. Edmonds ex rel. Edmonds,* 717 N.E.2d 981, 986 (Ind.Ct.App.1999) (stating that the unexcused or unjustified violation of a duty prescribed by statute constitutes negligence per se if the statute is intended to protect the class of persons in which the plaintiff is included and to protect against the risk of the type of harm which has occurred as a result of its violation), *trans. denied.*

However, as Kuchaes points out, the federal regulation implementing section 300aa–26(d) was not enacted until October 15, 1991—four months after the physicians' administration of the vaccine to B.R.—and did not require physicians to begin provid-

ing the information materials until April 15, 1992, which was even longer after B.R. was vaccinated. *See* Vaccine Information Materials, 56 Fed.Reg. 51798 (Oct. 15, 1991). Thus, the physicians' omission to provide vaccine information materials to B.R.'s mother did not violate the statute and as such did not constitute negligence per se.

■ Based on the above, Price has designated some evidence that could arguably have supported the breach of duty and causation elements of a medical negligence claim, yet in the absence of a better developed record we cannot conclude the evidence would have entitled Price to prevail on the merits of such a claim. For instance, a reasonable argument could be made that the physicians had no duty to Cathy, who was not their patient. *Compare Webb v. Jarvis*, 575 N.E.2d 992, 998 (Ind.1991) (holding physician had no duty to third party injured by patient after patient was prescribed anabolic steroids and developed a resulting psychosis, and that while "generally physicians do not owe a duty to unknown nonpatients who may be injured by the physician's treatment of a patient," the duty analysis is fact-sensitive) *with Cram v. Howell*, 680 N.E.2d 1096, 1098 (Ind.1997) (holding physician owed a duty to third party allegedly injured when patient lost consciousness while driving, as the complaint "allege[d] facts that imply the defendant physician had actual knowledge that his immunizations and/or vaccinations caused repeated loss of consciousness in his patient").

Moreover, if the medical negligence claim had been pursued, the medical defendants may well have produced evidence that they did provide information or warnings to B.R.'s mother or that their omission to do so did not breach the standard of care. We do not know on the present record what the evidence would or would not have been, and for summary judgment purposes we cannot rely on speculation that Price's theory of recovery would have been unrefuted by the medical defendants. We also note that the breach of duty and proximate cause elements of a negligence claim are particularly fact-sensitive and rarely suitable for resolution on summary judgment. *See Rhodes v. Wright*, 805 N.E.2d 382, 387–88 (Ind.2004). For the same reasons, summary judgment regarding a claim of legal malpractice is equally improper where, as here, the underlying litigation required proving such elements of negligence.

For the above reasons, we conclude that issues of material fact remain as to whether Price's loss of consortium claims against the vaccine manufacturers and medical defendants would have been successful had Kuchaes properly pursued them, and therefore Price is not entitled to summary judgment as to Kuchaes's liability for malpractice. We reverse the trial court's August 17, 2009 grant of partial summary judgment to Price and remand for further proceedings consistent with this opinion.

### B. Damages

Price argues the trial court erred in denying his motion for summary judgment as to the issue of damages. Because of our conclusion above that the trial court erred when it granted Price summary judgment as to Kuchaes's liability for malpractice, we necessarily conclude Price is not entitled to summary judgment as to damages, and we affirm this part of the trial court's August 17, 2009 order.

### *Conclusion*

In sum, we conclude that Price has standing to pursue this legal malpractice action and that the trial court erred when it granted Kuchaes summary judgment based on judicial estoppel. Further, issues of material fact remain such that Price is

not entitled to summary judgment as to Kuchaes's liability for malpractice, though the trial court correctly denied Price summary judgment as to damages. We reverse the trial court's July 2, 2010 summary judgment order, reverse in part and affirm in part the trial court's August 17, 2009 summary judgment order, and remand for further proceedings consistent with this opinion.

Reversed in part, affirmed in part, and remanded.

NAJAM, J., and CRONE, J., concur.