Steve **SHEWMAKER,** Appellant–Plaintiff,

v.

Gerald **ETTER,** Appellee–Defendant,

and

**William J. Franzmann, Nominal Appellee–Defendant.**

No. 49A02–9310–CV–525.

Court of Appeals of Indiana, Second District.

Dec. 28, 1994.

James R. Fisher, Donald M. Snemis, Ice Miller Donadio & Ryan, Indianapolis, for appellant.

Mark R. Smith, T. Neil Bemenderfer, Smith & Bemenderfer, Indianapolis, for appellee Gerald Etter.

## OPINION

SULLIVAN, Judge.

Steve Shewmaker (Shewmaker) appeals a grant of summary judgment in favor of Gerald Etter (Etter). The parties present several issues, which we restate as:

I. Whether the trial court erred in allowing Etter to amend his answer to include several affirmative defenses;

II. whether the trial court erred in finding that Shewmaker lacked standing to bring this personal injury claim against Etter;

III. whether Shewmaker waived any objection to the trial court's finding that his claim was barred by the doctrines of equitable estoppel, judicial estoppel, and res judicata; and

IV. whether the trial court erred in finding that Shewmaker's claim was barred by the doctrines of equitable estoppel, judicial estoppel, and res judicata.

We reverse.

In May of 1990, Shewmaker was driving a motorcycle when it left the road and crashed into a metal guard rail erected on Etter's property. Shewmaker sustained serious injury. On October 18 of the same year, Shewmaker filed a Chapter 7 bankruptcy petition seeking relief from $62,319.47 in medical bills which he had incurred as a result of the collision. The only creditors listed were the doctors and medical institutions which provided goods and services to Shewmaker as a result of his injuries. Shewmaker failed to list his cause of action against Etter upon his schedule of personal property. In February of 1991, Shewmaker received a discharge in bankruptcy from the United States Bankruptcy Court. Unknown to Shewmaker or to the bankruptcy court

judge, Shewmaker actually never had any creditors. Because Shewmaker was covered by Medicare, he never had responsibility to pay the health care providers listed as creditors in the bankruptcy petition. The sole remedy of the health-care providers was against Medicare.

In October of 1991, Shewmaker filed a personal injury action against Etter alleging that Etter was negligent in placing the guard rail upon his property. Almost one year after the suit was filed, Etter discovered that Shewmaker had received a discharge in bankruptcy, but had failed to list the present cause of action on the schedule of assets. Shortly after receiving notice of Shewmaker's bankruptcy, Etter moved for summary judgment based upon the bankruptcy discharge, relying upon the affirmative defenses of standing, equitable estoppel, judicial estoppel, and res judicata.

Before filing his response to Etter's motion for summary judgment, Shewmaker, along with the bankruptcy trustee, petitioned the bankruptcy court to reopen the bankruptcy proceedings. The bankruptcy court granted the motion, specifically finding that Shewmaker never had any creditors and that the discharge had provided him no relief from debt. The court then amended the property schedule to include Shewmaker's claim against Etter, and on April 6, 1993, dismissed the bankruptcy petition *nunc pro tunc* as of June 1, 1990, more than one year before the filing of the personal injury action.

After receiving relief in the bankruptcy court, Shewmaker responded to Etter's motion for summary judgment, arguing that the dismissal cured all defects. The trial court granted summary judgment in favor of Etter. The court determined that, because Shewmaker had failed to list the chose in action in his original assets schedule, he did not own the action and thus lacked standing to sue. Further, the court found that the action was barred by equitable estoppel, judicial estoppel, and res judicata.

## I. *Amendment*

Shewmaker contends that the trial court erred in allowing Etter to amend his answer to include affirmative defenses twenty months after filing his original answer. We disagree.

Although the parties engaged in discovery in the year after Shewmaker filed his complaint, it was not until October 7, 1992, that one of Etter's discovery requests revealed the fact that Shewmaker had filed bankruptcy. Two weeks later, Etter moved for summary judgment alleging the four affirmative defenses. Rather than responding directly to the summary judgment motion, Shewmaker moved to strike the summary judgment motion claiming that Etter had waived these affirmative defenses for failing to assert them in his answer. Subsequently, Etter moved for leave to amend his answer to include them. The trial court granted Etter leave to amend.[1]

It is within the trial court's sound discretion to grant a party leave to amend an answer to include an affirmative defense. *Indiana Dept. of Public Welfare v. Clark* (1985) 1st Dist.Ind.App., 478 N.E.2d 699, 703, *cert. denied* (1986) 476 U.S. 1170, 106 S.Ct. 2893, 90 L.Ed.2d 980. The grant will only be reversed for abuse thereof. The policy of this state is to liberally allow amendments in order to bring all issues before the trial court. *Cox v. Indiana Subcontractors Ass'n* (1982) 1st Dist.Ind.App., 441 N.E.2d 222, 225. Accordingly, a party may not claim error where he has not been prejudiced by the amendment.

Here, Shewmaker claims that he was prejudiced by the amendment because it led to a summary judgment against him. Shewmaker does not claim that the delay in asserting the defenses caused him prejudice; rather, he claims that prejudice resulted because the defenses were successful. According to this logic, a defendant should never be allowed to plead affirmative defenses in the first instance because it might cause the

---

1. The trial court granted Etter's motion for summary judgment on June 30, 1993, before he granted Etter's motion to amend his answer. Then, on July 12, 1993, the trial court entered a *nunc pro tunc* order amending Etter's complaint as of June 29, 1993, the day before entry of the summary judgment order.

plaintiff to lose. We hold that prejudice must result from *delay* in asserting the defense, not from the likelihood of the success of the defense itself.[2]

■ Shewmaker claims prejudice upon two other grounds. He argues that if Etter had asserted the affirmative defenses in his original answer, Shewmaker would have been within the one-year time limit in which revocation of a bankruptcy may be had. Alternatively, he argues that at the time of the original answer, the two-year statute of limitations period on the claim had not yet run, and that therefore he could have substituted the bankruptcy trustee as the correct plaintiff. These arguments have been rejected before. *Bradley v. Stiller* (1992) 3d Dist.Ind. App., 604 N.E.2d 1242, *trans. denied; Clark, supra*, 478 N.E.2d 699. Shewmaker's failure to seek revocation of the bankruptcy within the statutory time limit cannot be charged to Etter, especially where Shewmaker did not advise Etter of the bankruptcy until the time limit had expired. The reason that the bankruptcy trustee did not prosecute the action is because Shewmaker did not disclose it in the bankruptcy petition—not because Etter delayed in asserting his affirmative defenses. *Bradley, supra* at 1245.

■ Shewmaker claims that the trial court's decision was inequitable because it gave Etter a "windfall" in that Etter was relieved of the responsibility to "pay for his torts." Reply Brief of Appellant at 22. Even a plaintiff who has a clearly meritorious claim against the most egregious of wrongdoers may lose his cause of action if he fails to comply with certain procedural requirements, *e.g.*, the statute of limitations. Arguably, this is a windfall to the defendant. However, our State imposes a duty upon plaintiffs to comply with requirements necessary for an orderly and workable system of justice. Where the plaintiff's chargeable fail-

ure to comply with these requirements results in loss of his cause of action, he may not successfully complain.

Shewmaker has not directed us to a case in which the grant of leave to amend has been reversed, and we find no abuse of discretion here.[3]

## II. *Standing*

■ When a debtor files a petition in bankruptcy, the debtor is divested of all of his or her assets, including any potential causes of action. 11 U.S.C. § 541(a) (1986). Etter argues that the bankruptcy dismissal did not return ownership of Shewmaker's claim to him and, therefore, Shewmaker had no standing to sue. Shewmaker argues that the bankruptcy court's order did return the cause of action to him and to hold otherwise would violate the Supremacy Clause of the federal Constitution. We agree.

■ The federal Constitution grants the federal government exclusive power to promulgate bankruptcy laws. U.S. Const., art. I, § 8. Accordingly, United States Bankruptcy Court rulings upon bankruptcy issues are controlling upon state court issues pursuant to the Supremacy Clause.[4] *Renges, Inc. v. PAC Financial Corp.* (1987) 2d Dist. Ind.App., 515 N.E.2d 563. Specifically, a bankruptcy court has exclusive jurisdiction to interpret the scope and effect of its dismissal order. *See Hendrix v. Page* (1993) 1st Dist. Ind.App., 622 N.E.2d 564, 567, *reh'g. denied* 640 N.E.2d 1081 (1994).

■ The bankruptcy court dismissed Shewmaker's petition pursuant to 11 U.S.C. § 349 (1985). "The basic purpose of the [dismissal] subsection is to undo the bankruptcy case, as far as practicable, and to restore all property rights to the position in which they were found at the commencement

---

**2.** We note that Shewmaker amended his complaint to include two additional theories of recovery almost seven months after the original was filed. According to Shewmaker's logic, if he had succeeded in his suit against Etter based upon either of these two theories, Etter would be able to show that he had been prejudiced by the amendment. This argument is without merit.

**3.** Alternatively, Shewmaker alleges that Etter has waived his affirmative defenses by failing to assert them in his original answer. However, because we hold that the trial court correctly granted Etter leave to amend the answer, the affirmative defenses were included in such answer and were not waived.

**4.** U.S. Const., art. VI.

of the case." *In re Genovese* (1988) E.D.Tenn., 91 B.R. 831, 838, quoting S.Rep. No. 989, 95th Cong., 2d Sess. 49, U.S.Code Cong. & Admin.News 1978 at pp. 5787, 5835. To this end, a dismissal "revests the property of the [bankruptcy] estate in the entity in which such property was vested immediately before the commencement of the [bankruptcy] case...." 11 U.S.C. § 349(b). The word "entity" means debtor. *In re Baylies* (1990) D.Colo., 114 B.R. 324. Finally, "*The court is permitted to order a different result for cause.*" *In re Genovese, supra,* (emphasis in original).

Despite the statutory wording and history, Etter points out that Shewmaker did not receive a dismissal until after he had been discharged in bankruptcy. Etter cites several cases in which bankruptcy courts have held that in such a situation, not all of the effects of the bankruptcy are nullified. For example, some federal courts have held that a debtor who has been discharged in bankruptcy must continue to pay creditors according to the reorganization plan and that a dismissal does not vacate the plan. *In re Searles* (1987) D.R.I., 70 B.R. 266; *Matter of Depew* (1989) N.D.Ind., 115 B.R. 965. *Contra, In re Slaughter* (1992) N.D.Ill., 141 B.R. 661; *In re Nash* (1985) 9th Cir., 765 F.2d 1410.

The flaw in Etter's argument is that we are not a federal bankruptcy court. We do not doubt that in some cases the federal courts have refused to dissolve all of the incidents of the bankruptcy. However, that is not what the bankruptcy judge did in this case.

In the bankruptcy judge's order granting Shewmaker's motion to reopen, the judge detailed Shewmaker's accident, his failure to list the claim, the effect the bankruptcy had upon his ability to pursue the claim, and the fact that he actually had no creditors. The order recited:

"[T]he 1990 filing creates a blemish on his credit record without affording him any relief from debt.... Etter's various statutory arguments against reopening ignore the desirability, from a bankruptcy perspective, of the result the Debtor is attempting to achieve. In a perfect economic world, all debtors would reconsider their decisions to discharge their debts, and reopen their bankruptcy cases to dismiss their petitions, so that all parties could go forward *as if no petition had ever been filed.*" Record at 443–444 (emphasis supplied).

■ In his order dismissing the case, the bankruptcy judge stated that Shewmaker is "authorized to amend Schedule B of his Schedule of Assets to include the Debtor's cause of action against Gerald Etter which pends before the Marion County Superior Court under Cause No. 49D07–9110–CP–1223...." Record at 448. It affirmatively appears from the record that the bankruptcy judge intended "to undo the bankruptcy case" and "to restore all property rights to the position in which they were found at the commencement of the case." *In re Genovese, supra,* 91 B.R. at 833. He was empowered to do so by the express authority of § 349. It is not our province to state that he should have reached a different result.

■ Etter argues that there are other procedures Shewmaker should have followed in order to regain ownership of the cause of action. He argues that Shewmaker should have sought revocation of the bankruptcy,[5] should have sought to have the asset abandoned from the bankruptcy estate, or should have substituted the bankruptcy trustee as the real party in interest. Again, Etter ignores the fact that Indiana may not dictate to the bankruptcy court the procedures that court should have followed in order to return property to Shewmaker. The bankruptcy judge returned the cause of action to Shewmaker according to the provisions set forth

5. Both parties misunderstand the role of revocation under 11 U.S.C. § 1144. Revocation "is available only where the order of confirmation is obtained through fraud." *Matter of Depew, supra,* 115 B.R. at 967. Where the debtor has not obtained the discharge or confirmation order through fraud, the bankruptcy court has no authority to revoke the discharge or confirmation authority. *Id.*

Revocation of a discharge is a remedy sought by the bankruptcy trustee where the debtor has fraudulently procured relief from the bankruptcy court. It is not a method by which a debtor may seek to nullify the bankruptcy proceedings.

in § 349. We have no authority to second-guess his methods.

Here, the trial court found, "Once Plaintiff Shewmaker's personal injury claim against Defendant Etter became property of the bankruptcy estate, Plaintiff Shewmaker could not pursue the personal injury claim unless it was abandoned from the bankruptcy estate." Record at 515. By stating that abandonment was the only method by which the bankruptcy court could return ownership of the claim to Shewmaker, the trial court, in violation of the Supremacy Clause, impermissibly interpreted federal law. The trial court stated, "Plaintiff Shewmaker lacks standing to pursue the personal injury claim against Defendant Etter." Record at 515. The basis for the trial court's finding of lack of standing was its improper interpretation of federal law. In reviewing a motion for summary judgment, we apply the same standard as the trial court and, thus, no deference is given the trial court's judgment. *Inland Steel v. Pequignot* (1993) 4th Dist. Ind.App., 608 N.E.2d 1378, *trans. denied.* The trial court erred in finding that Shewmaker lacked standing and in granting summary judgment upon that basis.

Etter argues that if the dismissal did cause Shewmaker to regain ownership of the cause of action, i.e., to obtain standing, it was too late. That is, Shewmaker did not gain standing until the time of the bankruptcy court's order, a year after the statute of limitations had expired. We disagree.

The bankruptcy judge entered the dismissal of the bankruptcy petition *nunc pro tunc.* As Shewmaker points out, *nunc pro tunc* means "now for then." Black's Law Dictionary 964 (5th Ed.1979). In other words, the bankruptcy action was dismissed as of June 1, 1990. The complaint was filed on October 31, 1991. Accordingly, Shewmaker had standing when he filed his original complaint.[6]

### III. *Waiver*

Etter contends that Shewmaker has waived any objection to the trial court's finding that his claim was barred by equitable estoppel, judicial estoppel, and res judicata. Etter alleges that Shewmaker's motion in opposition to summary judgment and his appellant's brief only addressed the issue of standing. We disagree.[7]

In Etter's brief in support of his motion for summary judgment, he makes the plain statement that Shewmaker is barred by equitable estoppel, judicial estoppel, and res judicata from pursuing the claim. Etter cites to *Schlosser v. Bank of Western Indiana* (1992) 1st Dist.Ind.App., 589 N.E.2d 1176, but provides no argument, analogy, or analysis upon these issues.[8] In response, Shewmaker argues that the effect of the bankruptcy dismissal was as if the bankruptcy petition had never been filed in the first place. If no bankruptcy had been filed, the doctrines of equitable estoppel, judicial estoppel, and res judicata could not apply.[9] Al-

---

**6.** Again, whether the bankruptcy judge's *nunc pro tunc* entry would suffice under Indiana law is of no moment.

**7.** Both parties appear to have been deflected in addressing this argument by citing *Franklin Bank .and Trust Co. v. Mithoefer* (1990) Ind., 563 N.E.2d 551; *Public Serv. Indiana v. Nichols* (1986) 4th Dist.Ind.App., 494 N.E.2d 349, *reh'g. denied;* and *Fortmeyer v. Summit Bank* (1991) 3d Dist.Ind.App., 565 N.E.2d 1118. In these cases, the party who lost the summary judgment motion attacked the judgment on appeal based upon a theory not presented to the trial court. Here, Etter does not claim that Shewmaker has attacked the summary judgment motion with a new theory not presented to the trial court. Indeed, we see no new legal theories in Shewmaker's brief. Rather, Etter claims that Shewmaker has failed to address *Etter's* arguments *in support* of the summary judgment motion. Accordingly,

the foregoing authorities and arguments derived therefrom are inapposite.

**8.** The only analysis in *Schlosser* regarding these issues is a flat statement that the doctrines of equitable estoppel, judicial estoppel, and res judicata could bar the claim. 589 N.E.2d at 1179. However, the *Schlosser* court decided the case based solely upon lack of standing. "[W]e do not reach here the other doctrines used to bar such litigation." *Id.* The authority cited does not provide assistance in our application of these three doctrines.

**9.** The trial court's conclusions of law simply state:

"By virtue of Plaintiff Shewmaker's failure to disclose the personal injury claim against Defendant Etter in the Shewmaker Bankruptcy, Plaintiff Shewmaker is precluded from pursu-

though, at the trial level, neither the court nor the parties thoroughly discussed any of the three issues which Etter claims are waived, the issues are sufficiently preserved for our review.

Etter also claims waiver at the appellate level. In determining whether a party has waived an issue upon appeal, we look to whether the brief is so deficient that the reviewing court is required to make a party's argument upon its behalf. *Terpstra v. Farmers and Merchant Bank* (1985) 3d Dist. Ind.App., 483 N.E.2d 749, 754, *trans. denied.* We find no such deficiency here. The arguments are made with sufficient clarity to permit our consideration.

### IV. *Equitable Doctrines*

Etter argues that even if the dismissal did return ownership of the cause of action to Shewmaker, the claim should be barred by equitable estoppel, judicial estoppel, and res judicata. We agree that barring a cause of action in state court based upon these equitable doctrines does not violate the Supremacy Clause. The federal courts cannot decide what effect the filing of a state court action in violation of bankruptcy procedures has upon state proceedings. *Hendrix, supra,* 622 N.E.2d 564 (where plaintiff filed cause of action against debtor in violation of automatic stay and did not refile until after state statute of limitations had expired, it was province of state court to decide whether limitations period had been tolled). However, the trial judge erred in granting summary judgment upon these grounds.

### A. *Equitable Estoppel*

Etter argues that "equitable estoppel must be utilized to protect the integrity of the bankruptcy system." Brief of Appellee at 42. We agree that state courts have some responsibility to protect the processes of the bankruptcy system. *Schlosser,*

*supra,* 589 N.E.2d at 1179. A state court will not countenance a plan to "[c]onceal your claims; get rid of your creditors oh the cheap, and start over with a bundle of rights." *Payless Wholesale Distrib. v. Alberto Culver* (1993) 1st Cir., 989 F.2d 570, 571, *cert. denied* (1993) — U.S. —, 114 S.Ct. 344, 126 L.Ed.2d 309. Indiana will not allow a debtor who has shielded assets from his creditors to pursue that asset in its courts.

However, an essential element of equitable estoppel, i.e., reliance, is not present in this case. *Miller Jewelry Co. v. Dickson* (1942) 111 Ind.App. 676, 42 N.E.2d 398. "The importance of full disclosure is underlaid by the reliance placed upon the disclosure statement by the creditors and the court.... In such circumstances, employment of equitable estoppel is required...." *Oneida Motor Freight, Inc. v. United Jersey Bank* (1988) 3d Cir., 848 F.2d 414, 417–18, *cert. denied* (1988) 488 U.S. 967, 109 S.Ct. 495, 102 L.Ed.2d 532.

It is true that the bankruptcy judge relied upon Shewmaker's asset schedule in granting his bankruptcy discharge. Upon learning of the omitted asset, the bankruptcy trustee could have sought to have Shewmaker's bankruptcy discharge revoked and his original "debts" reinstated.[10] Instead, the trustee chose to join Shewmaker's petition to have the bankruptcy dismissed. The bankruptcy court knew that Shewmaker had omitted the cause of action upon the original petition, yet forgave the omission by granting a dismissal. Any reliance placed upon the omission by the bankruptcy court was cured. No creditors relied upon the defective property schedule because Shewmaker had none. Had Shewmaker never received a dismissal from the bankruptcy judge, we might be constrained to recite an additional principle.[11]

### B. *Judicial Estoppel*

Etter asserts that because Shewmaker did not include his cause of action in

---

ing the personal injury claim against Defendant Etter under the doctrine of equitable estoppel, judicial estoppel and *res judicata.''* Record at 516.

**10.** Where the debtor procures relief from the bankruptcy court through fraud, the bankruptcy trustee may seek to have the discharge revoked according to 11 U.S.C. § 1144. *Matter of Depew, supra,* 115 B.R. at 973.

**11.** Equitable estoppel would be inappropriate in this case upon alternative grounds. As stated by the authority upon which Etter relies, an essential element of equitable estoppel is reliance upon the misrepresentations. *Pako Corp. v. City-Trust* (1989) D.Minn., 109 B.R. 368. Accordingly, a party who was not a creditor in the bankruptcy action and who did not rely upon the

his bankruptcy petition, he is judicially estopped from asserting the claim now. Judicial estoppel is not appropriate in this case. Judicial estoppel prevents a party from assuming a position in a legal proceeding inconsistent with one previously asserted. *Tobin v. McClellan* (1947) 225 Ind. 335, 73 N.E.2d 679. In bankruptcy proceedings, its purpose is to "prevent the party [from] 'playing fast and loose' with the courts, and to protect the essential integrity of the judicial process." *In re Hoffman* (1989) N.D.Iowa, 99 B.R. 929, 935. However, the admissions must have been acted upon by the court. *Tobin, supra.* Here, Shewmaker presented his omission to the bankruptcy court and was allowed to cure it. Thus, the bankruptcy court did not rely upon the faulty asset schedule in making its final decision. Because the bankruptcy court essentially held that no fraud had been perpetrated upon it, it is inappropriate for us to refuse to entertain an action based upon grounds that the bankruptcy court erroneously and finally acted upon the premise that Shewmaker had no claim against Etter. The bankruptcy court did not do so. It specifically permitted Shewmaker to schedule the cause of action.

### C. *Res Judicata*

 Finally, res judicata is not applicable in this case. Res judicata bars the relitigation of issues which were actually litigated or which could have been litigated in the first action. *Sullivan v. American Cas. Co. of Reading, Pa.* (1992) Ind., 605 N.E.2d 134. However, due to the bankruptcy judge's *nunc pro tunc* order there was no "first action" to which res judicata may attach.

The trial court erred in granting summary judgment.

The judgment is reversed and the cause is remanded for further proceedings.

FRIEDLANDER and BARTEAU, JJ., concur.

asset schedule cannot raise equitable estoppel as

a bar to a subsequent suit. 109 B.R. at 376, n. 2.