


FILED

May 21 2024, 11:14 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# IN THE
# Indiana Supreme Court

Supreme Court Case No. 23S-CT-304

## Red Lobster Restaurants LLC,[1]
*Appellant/Defendant,*

—v—

## Abigail Fricke,
*Appellee/Plaintiff.*

Argued: December 14, 2023 | Decided: May 21, 2024

Appeal from the Marion County Superior Court
No. 49D02-2008-CT-29481
The Honorable Timothy Oakes, Judge

On Petition to Transfer from the Indiana Court of Appeals
No. 22A-CT-2221

**Opinion by Justice Molter**

Chief Justice Rush and Justices Massa, Slaughter, and Goff concur.

---

[1] Defendants Progressive Flooring Services, Inc. and Dwayne Featheroff are parties on appeal under Indiana Appellate Rule 17(A), but they have not participated in the appeal.

**Molter, Justice.**

Abigail Fricke filed a Chapter 13 bankruptcy petition in the United States Bankruptcy Court. As part of that process, federal bankruptcy law required her to disclose all her assets, including any lawsuits, and to update that disclosure with any assets she acquired later. Roughly three years later, Fricke filed this lawsuit alleging she was injured when Red Lobster's negligence caused her to trip and fall in its restaurant. But she didn't update her bankruptcy asset schedule until after Red Lobster moved for summary judgment based on standing and judicial estoppel.

The trial court denied Red Lobster's summary judgment motion, and the Court of Appeals affirmed, deepening a divide between panels over two questions. First, does a plaintiff-debtor's omission of a lawsuit from their bankruptcy asset schedule deprive them of standing to pursue that lawsuit? Second, does their representation to the federal bankruptcy court that they don't have any potential or pending legal claims judicially estop them from pursuing a claim in our state courts?

In *Hammes v. Brumley*, 659 N.E.2d 1021 (Ind. 1995), our Court established two bright line rules for Chapter 7 bankruptcies that we now extend to Chapter 13 bankruptcies. First, a plaintiff-debtor's omission of a lawsuit from their bankruptcy asset schedule does not deprive them of standing to pursue that lawsuit, although the omission may mean they are not the real party in interest. Second, judicial estoppel does not bar the claim if the bankruptcy court permits the plaintiff-debtor to cure their omission by amending their asset schedule.

Those two rules don't resolve every aspect of the split in Court of Appeals authority, but they compel us to affirm the trial court's order here. As in *Hammes*, Fricke's initial omission did not deprive her of standing. And she cured that omission by amending her asset schedule to disclose this lawsuit, so judicial estoppel does not bar her claim either.

# Facts and Procedural History

## I.   Federal Bankruptcy Proceedings

The United States Bankruptcy Code offers overwhelmed debtors several paths to a "fresh start" by repaying some of their debts and discharging the rest. *Harris v. Viegelahn*, 575 U.S. 510, 513 (2015) (quotations omitted). Chapter 7 and Chapter 13 bankruptcy proceedings are the paths individuals usually travel.

"Chapter 7 allows a debtor to make a clean break from his financial past, but at a steep price: prompt liquidation of the debtor's assets." *Id.* When a debtor files a Chapter 7 bankruptcy petition, they must disclose all their assets, which (with some exceptions) they surrender to the bankruptcy trustee to comprise the bankruptcy estate. 11 U.S.C. § 521(a)(1)(B)(i), (a)(4). The trustee then sells that property and uses the proceeds to pay creditors, with remaining debts generally discharged. *Id.* §§ 541(a)(1), 704(a)(1), 726, 727. But those assets don't include the debtor's earnings or assets the debtor acquires after filing the bankruptcy petition. *Id.* § 541(a)(1). So "while a Chapter 7 debtor must forfeit virtually all his prepetition property, he is able to make a 'fresh start' by shielding from creditors his postpetition earnings and acquisitions." *Harris*, 575 U.S. at 514.

Chapter 13 is an alternative to Chapter 7 and is known as a "wage earner's plan." *Perry v. Com. Loan Co.*, 383 U.S. 392, 397 (1966) (quotations omitted). This option is only available to individuals with debts below a statutory limit and regular income. 11 U.S.C. § 109(e). It "allows a debtor to retain his property if he proposes, and gains court confirmation of, a plan to repay his debts over a three- to five-year period," *Harris*, 575 U.S. at 514, with collection efforts stayed in the meantime, 11 U.S.C. § 362. Chapter 13 debt payments are from the debtor's "future earnings or other future income*." Id.* § 1322(a)(1). An impartial trustee administers the case, and those responsibilities include collecting payments from the debtor and paying creditors*. Id.* § 1326.

When the debtor files their Chapter 13 bankruptcy petition, they include a schedule of assets and liabilities and a schedule of current income and expenditures. *Id.* § 521(a)(1)(B)(i)–(ii). Shortly after the debtor files the bankruptcy petition, the trustee convenes a meeting where the debtor, under oath, answers the trustee's and creditors' questions about the debtor's finances and proposed repayment plan. *Id.* §§ 341, 343. Following that meeting, the bankruptcy judge has a hearing with the debtor, trustee, and creditors to review the debtor's proposed repayment plan. *Id.* § 1324.

If the judge "confirm[s]" the plan, the trustee begins paying creditors "as soon as is practicable*." Id.* § 1326(a)(2). If the judge does not confirm the plan, the debtor may propose a modified plan. *Id.* § 1323. If circumstances change, the plan can be modified either before or after confirmation at the request of the debtor, trustee, or creditors. *Id*. §§ 1323, 1329. Once the debtor completes the payments required under the plan, the remaining debts are generally discharged. *Id.* § 1328(a). And if the debtor fails to make the payments, the bankruptcy is dismissed without the debts being discharged. *Id.* § 1307(c)(6).

## II.  Fricke's Chapter 13 Bankruptcy and State Court Lawsuit

On May 17, 2017, Fricke filed a Chapter 13 bankruptcy petition with the United States Bankruptcy Court for the Southern District of Indiana, along with a schedule of assets. The bankruptcy court approved Fricke's five-year payment plan on September 8, 2017, and that plan included a standard provision for any assets Fricke might acquire later:

> If additional property comes into the estate pursuant to 11 U.S.C. §1306(a)(1) or if the Trustee discovers undisclosed property of the estate, then the Trustee may obtain such property or its proceeds to increase the total amount to be paid under the plan. No motion to modify the plan will be required but the Trustee may file a report to court. However, if the Trustee elects to take less than 100% of the property to

> which the estate is entitled OR less than the amount necessary
> to pay all allowed claims in full, then a motion to compromise
> and settle will be filed, and appropriate notice given.

App. Vol. II at 132.

After tripping and falling at a Red Lobster about two years later, Fricke sued the restaurant in the Marion Superior Court for personal injury on August 26, 2020. But she didn't update her bankruptcy asset schedule, and she responded to a Red Lobster interrogatory by saying she had never declared bankruptcy. After discovering Fricke's bankruptcy, Red Lobster moved for summary judgment, arguing that Fricke's claims were barred for two reasons: (1) she lacked standing because undisclosed assets—including undisclosed lawsuits—are the property of the bankruptcy estate, not the debtor; and (2) judicial estoppel barred her from pursuing her personal injury claim because she represented to the bankruptcy court that she had no such claim.

Fricke then amended her bankruptcy asset schedule to disclose the personal injury lawsuit. She also opposed Red Lobster's summary judgment, and her opposition included her affidavit explaining that her failure to update her bankruptcy asset schedule and her misstatement in her interrogatory response were innocent oversights. Neither the trustee nor Fricke's creditors objected to Fricke amending her asset schedule; they did not seek to modify the court-approved repayment plan; and they did not seek any sort of sanction for Fricke's failure to update her asset schedule more promptly. The trustee also did not seek to intervene in this state court lawsuit. Ultimately, the bankruptcy court dismissed Fricke's bankruptcy without discharging her debts because she fell behind in payments she owed the trustee.

The trial court denied Red Lobster's summary judgment motion, and through an interlocutory appeal, the Court of Appeals affirmed in a unanimous, published opinion. *Red Lobster Rests. LLC v. Fricke*, 213 N.E.3d 563, 568, 573 (Ind. Ct. App. 2023). The Court of Appeals explained that (1) "Fricke had standing because she sustained a direct injury," and (2) Red Lobster was not entitled to summary judgment based on judicial estoppel

because "a factual dispute exist[ed] regarding whether Fricke intentionally concealed the personal injury suit from the bankruptcy court." *Id.* at 572, 573. Red Lobster then petitioned for transfer, which we granted, 221 N.E.3d 1210 (Ind. 2023), thus vacating the Court of Appeals' opinion, Ind. Appellate Rule 58(A).

# Standard of Review

When we review a summary judgment decision, we apply the same standard as the trial court. *Korakis v. Mem'l Hosp. of S. Bend*, 225 N.E.3d 760, 764 (Ind. 2024). Summary judgment is proper only when the designated evidence shows no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *Id.* We construe all facts and reasonable inferences in the nonmovant's favor. *Id.*

# Discussion and Decision

Red Lobster argues it is entitled to summary judgment because Fricke's initial omission of this lawsuit from her bankruptcy asset schedule either deprives her of standing or judicially estops her from pursuing her claim. We conclude the trial court was correct to reject both arguments.

## I. Fricke has standing.

Red Lobster argues that Fricke lacks standing because her personal injury claim against Red Lobster is an asset that belonged to her bankruptcy estate, not her. Fricke responds that Red Lobster waived that argument by giving it only cursory treatment in Red Lobster's transfer petition, and the argument fails anyway because a bankruptcy debtor has standing to sue on behalf of the bankruptcy estate.

We agree with Red Lobster that it did not waive its standing argument, but we agree with Fricke that the argument fails.

### A. Waiver

In the Court of Appeals, Red Lobster's opening brief and reply brief argued that Fricke lacked standing because her personal injury claim was an asset that belonged to her bankruptcy estate rather than to her. But after the Court of Appeals rejected that argument, Red Lobster's transfer petition focused only on its other argument—that judicial estoppel barred Fricke's claim. Red Lobster's only mention of standing was to include a footnote, stating that it "incorporate[d] by reference its standing arguments as set forth in its original appellate briefing." Pet. to Trans. at 2 n.1.

Fricke argues that cursory treatment waived Red Lobster's standing argument because Appellate Rule 57 does not permit petitioners to incorporate arguments by reference to Court of Appeals briefing. Instead, Rule 57 only mentions incorporation by reference for the case background and prior treatment of the issues, providing that "[t]o the extent extensive procedural or factual background is necessary, reference may be made to the appellate briefs." App. R. 57(G)(3). Red Lobster responds that "[t]he rules clearly contemplate that this Court will look to the prior briefing" and that Red Lobster's "standing argument has been properly preserved for this Court to consider as grounds for summary judgment." Reply in Support of Pet. to Trans. at 6.

Both sides are right to some extent, but they are talking past each other because their discussion conflates transfer briefing with merits briefing. A transfer petition requests that we exercise our discretion to transfer an appeal from the Court of Appeals to our Court. App. R. 57(A), (H). If we grant transfer, that vacates the Court of Appeals' opinion, and we then "have jurisdiction over the appeal and all issues as if originally filed in [our] Court." App. R. 58(A). Rather than requiring another round of merits briefing like the United States Supreme Court does when it grants a petition for writ of certiorari, we instead rely on the parties' already-filed briefs in the Court of Appeals for their arguments about why they should prevail. *Id.* On occasion, we grant a request to transfer an appeal to our Court before any briefing in the Court of Appeals, but even then, the

parties still file merits briefing separately from their briefing on the petitioner's transfer request. App. R. 56(A).

Appellate Rule 57(G)(4) requires transfer petitions to include "[a]n argument section explaining the reasons why transfer should be granted." Fricke is correct that a party does not satisfy that requirement by merely cross-referencing an argument in its Court of Appeals merits briefing without elaborating on why that prior argument warrants our Court exercising its discretion to review the appeal. *Lockridge v. State*, 809 N.E.2d 843, 844 (Ind. 2004). Appellate Rule 57(H) lists the "principal considerations" for transfer, which are whether the appeal reveals a conflict between Court of Appeals' decisions, a conflict with a decision from our Court, a conflict with federal authority, an important question of first impression, a precedent needing reconsideration, or a significant departure from law or practice. Simply cross-referencing an argument about why the law supports a party's position does not explain why the case involves one or more of those Appellate Rule 57(H) considerations.

"At the same time, Appellate Rule 57(G)(4) should not be read to require a party to repeat all of the arguments made in the brief to the Court of Appeals." *Lockridge*, 809 N.E.2d at 844. Instead, "[i]t is appropriate in a transfer brief to cross-reference the analysis of the merits of the underlying legal argument contained in the brief to the Court of Appeals" when explaining how the appeal presents one or more of Appellate Rule 57(H)'s transfer considerations. *Id.* So while the transfer briefing should focus on whether we should grant transfer, that discussion may cross-reference the merits briefing. And while "the most helpful transfer briefs combine argument as to why the court should (or should not) grant transfer and argument on the merits," a party does not waive their merits arguments by omitting them from their transfer briefing. *Id.*

So Fricke is correct that Red Lobster's incorporation by reference of its standing argument was not an adequate explanation of why the Court of Appeals' standing analysis warranted transfer to our Court. *See id.* (explaining that "mere reference to argument and/or authorities presented in brief to [the Court of Appeals] without an explanation of the reasons why transfer should be granted[ ] does not satisfy Rule 57(G)"). But once

we granted transfer based on Red Lobster's discussion of judicial estoppel, the appeal was transferred to our Court in its entirety, including the parties' briefing in the Court of Appeals addressing other issues. And since Red Lobster's Court of Appeals' briefing addressed standing, it did not waive the issue by omitting it from its transfer briefing. In all events, standing is a threshold, jurisdictional issue that can be raised at any time. *Solarize Ind., Inc. v. S. Ind. Gas & Elec. Co.*, 182 N.E.3d 212, 215 (Ind. 2022).

Because the standing issue is properly before us, we next consider the merits of Red Lobster's standing argument.

## B. Standing

Red Lobster argues the trial court should have entered summary judgment in its favor because Fricke lacked standing to sue. We agree with the trial court.

"The threshold issue of standing determines whether a litigant is entitled to have a court decide the substantive issues of a dispute." *Id.* at 216. Standing "derives from our state constitution's separation-of-powers clause," requiring that the plaintiff "demonstrate a personal stake in the outcome of the litigation and show that they have suffered or were in immediate danger of suffering a direct injury as a result of the complained-of conduct." *Id.* at 216–17 (cleaned up). Typically, there is no question that a personal injury plaintiff has standing because the essence of a personal injury claim is a plaintiff's allegation that they were injured by something the defendant did or didn't do, which is what standing generally requires. This case is typical in that respect—Fricke sued Red Lobster alleging that its negligence caused her injury.

What makes this case atypical is that Fricke filed for bankruptcy before she filed this lawsuit. Under the Bankruptcy Code, the bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). That includes any personal injury cause of action. *Hammes*, 659 N.E.2d at 1025 n.4. And in a Chapter 13 bankruptcy, the estate includes assets "the debtor acquires after the commencement of the case but before the case is closed,

dismissed, or converted" to another bankruptcy chapter. 11 U.S.C. § 1306(a)(1). Those debtors "have a continuing duty to schedule newly acquired assets while the bankruptcy case is open." *Rainey v. United Parcel Serv., Inc.*, 466 F. App'x 542, 544 (7th Cir. 2012).

Debtors' lawsuits are treated differently depending on whether the bankruptcy is under Chapter 7 or Chapter 13. "Chapter 7 establishes a much more radical solution to indebtedness, requiring the liquidation of the debtor's property, to which end Congress granted the trustee broad powers without interference from the debtor." *Cable v. Ivy Tech State Coll.*, 200 F.3d 467, 472 (7th Cir. 1999), *overruled on other grounds by Hill v. Tangherlini*, 724 F.3 965 (7th Cir. 2013). As a result, the "trustee has sole authority to dispose of property, including managing litigation related to the estate." *Id.* So only the trustee can "prosecute or defend a claim belonging to the estate." *Id.*

"Chapter 13, on the other hand, encourages the debtor to pay his debts over time by establishing a court-approved payment plan but leaving the debtor in possession of the estate." *Id.* For Chapter 13 bankruptcies, the trustee is "an adviser and administrator to facilitate the repayment of debts according to the plan." *Id.* A Chapter 13 debtor maintains possession of the estate's property, so the debtor may still litigate claims, but only on behalf of the estate and its creditors. Fed. R. Bankr. P. 6009; *Rainey*, 466 F. App'x at 544 ("The debtor thus can pursue legal claims for the benefit of the estate and its creditors.").

Red Lobster argues that because Fricke's unliquidated claim against it—her personal injury lawsuit—belonged to the bankruptcy estate, she lacked standing to pursue the claim on her own behalf, and she wasn't litigating on behalf of the bankruptcy estate because she failed to timely disclose the lawsuit in the bankruptcy proceedings. Some Court of Appeals panels have agreed with this reasoning. *Capalla v. Best*, 198

N.E.3d 26, 36 (Ind. Ct. App. 2022).[2] Other panels, including the panel here, have reasoned instead that the plaintiff-debtor has standing despite the bankruptcy because the debtor is the injured party. *Red Lobster Rests.*, 213 N.E.3d at 573 ("Fricke had standing because she sustained a direct injury."); *Lorenz v. Anonymous Physician # 1*, 51 N.E.3d 391, 397 (Ind. Ct. App. 2016) ("However, the bankrupt party does have standing to sue because he is the party who sustained a direct injury as a result of the conduct at issue.").

Although Court of Appeals' panels have recently split over this question, our Court resolved the debate almost thirty years ago in *Hammes v. Brumley*, 659 N.E.2d at 1030. In that case, we took the same approach as the Court of Appeals panel here, concluding that the argument Red Lobster is making "inaccurately meshes the concepts of standing and real party in interest." *Id.* at 1029. "Standing refers to the question of whether a party has an actual demonstrable injury for purposes of a lawsuit." *Id.* The "real party in interest, on the other hand, is the person who is the true owner of the right sought to be enforced. He or she is the person who is entitled to the fruits of the action." *Id.* at 1030 (citation omitted); *accord Biesek v. Soo Line R. Co.*, 440 F.3d 410, 413 (7th Cir. 2006) (explaining that the "threshold issue" was whether the plaintiff was "the real party in interest"). While *Hammes* recognized this distinction in the context of a Chapter 7 bankruptcy, the distinction applies to Chapter 13 bankruptcies too. *See Henderson v. Franklin*, 782 F. App'x 866, 873 n.3 (11th Cir. 2019) (recognizing this distinction in a Chapter 13 bankruptcy case); *Autos, Inc. v. Gowin*, 244 F. App'x 885, 886 (10th Cir. 2007) (holding that a Chapter 13 debtor had standing to pursue legal claims against her car dealership

---

[2] *See also Price v. Kuchaes*, 950 N.E.2d 1218, 1227 (Ind. Ct. App. 2011) ("In sum, Price was divested of standing to pursue the malpractice action while his bankruptcy was pending."), *trans. denied*; *Robson v. Tex. E. Corp.*, 833 N.E.2d 461, 473 (Ind. Ct. App. 2005) ("A debtor's failure to schedule a cause of action as an asset in bankruptcy may also deprive the debtor of state court standing to pursue the unscheduled claim."), *trans. denied*; *Valley Fed. Sav. Bank v. Anderson*, 612 N.E.2d 1099, 1103 (Ind. Ct. App. 1993) ("In the instant case because the trustee had not abandoned the Andersons' right of action against Valley Bank, it belonged in the bankruptcy estate and the Andersons[ ] had no standing to bring the lawsuit.").

despite her knowing failure to schedule the claims in her bankruptcy plan).

Trial Rule 17(A) requires that "[e]very action shall be prosecuted in the name of the real party in interest," but "[n]o action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time after objection has been allowed for the real party in interest to ratify the action, or to be joined or substituted in the action." Ind. Trial Rule 17(A), (A)(2). When the real party in interest is substituted, the substitution "relates back to the date the initial complaint was filed." *Hammes*, 659 N.E.2d at 1030.

So when Fricke filed her lawsuit, she had standing to sue because she alleged "a demonstrable injury allegedly caused by" Red Lobster. *Id.* Even if Red Lobster was correct that she was improperly pursuing the claim on her own behalf rather than on behalf of the bankruptcy estate, that just meant she was not the real party in interest. Rather than dismissing the suit for lack of standing, the trial court would have needed to allow an opportunity to substitute the trustee as the real party in interest, with that amendment relating back to the original filing. *Id.*

Whether to substitute the trustee is now moot though. Fricke later disclosed this lawsuit in her bankruptcy, at which point she was properly pursuing the claim on behalf of the estate. *See Rainey*, 466 F. App'x at 544. And then the bankruptcy was dismissed, at which point the lawsuit was no longer part of the estate, and Fricke was properly pursuing it on her own behalf. 11 U.S.C. § 349(b)(3) (providing that dismissal "revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case").

Thus, Fricke has standing to sue, and the trial court did not err in denying Red Lobster's summary judgment motion based on standing.

## II. Judicial estoppel does not bar Fricke's personal injury lawsuit.

Red Lobster also argues the trial court should have granted its summary judgment motion because judicial estoppel bars Fricke's claim. Again, we agree with the trial court's decision.

Judicial estoppel is a judicially crafted doctrine deriving from courts' inherent authority to protect the judiciary's integrity by prohibiting litigants from playing "fast and loose" with the judicial process. *New Hampshire v. Maine*, 532 U.S. 742, 749–50 (2001) (cleaned up); *see generally* 12 Ind. Law Encyc. Estoppel & Waiver § 21 (2024). The doctrine does that by preventing litigants from prevailing on contradictory positions in the same or subsequent proceedings. *New Hampshire*, 532 U.S. at 749. The rule is: "Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *Id.* (cleaned up). Because this is an equitable doctrine to prevent "improper use of judicial machinery," there is no "exhaustive formula," and there are no "inflexible prerequisites." *Id.* at 750, 751 (quotations omitted). But courts tend to focus on three considerations.

First, whether a litigant's argument is "clearly inconsistent" with its earlier argument. *Id.* at 750 (quotations omitted). Second, whether the litigant successfully persuaded a court to accept its earlier argument, which means accepting the later inconsistent position "would create the perception that either the first or the second court was misled." *Id.* (quotations omitted); *see also Brightman v. State*, 758 N.E.2d 41, 48 (Ind. 2001) ("Moreover, even if the State's position was contrary to its previous one, judicial estoppel would apply only if the court had acted on the state's prior request."). Third, whether the litigant's actions would result in an "unfair advantage" or levy an "unfair detriment" on the opposition if the court did not apply estoppel. *New Hampshire*, 532 U.S. at 751.

Red Lobster argues judicial estoppel applies here because Fricke took contradictory positions in the federal bankruptcy court and the Marion Superior Court. By omitting this lawsuit from her asset schedule, she represented to the bankruptcy court that she had no claim against Red Lobster. Yet, by suing Red Lobster, she is now contending that she does have a claim against the restaurant. As Red Lobster sees it, "Fricke intentionally concealed assets—namely, the existence of this Lawsuit—from the bankruptcy court and bankruptcy trustee, and she similarly concealed the existence of her pending bankruptcy from the parties to this Lawsuit, as a means to benefit herself financially to the detriment of her creditors." Appellant's Br. at 13. "In so doing, Fricke made inconsistent representations to both the trial court and the U.S. Bankruptcy Court." *Id.*

Our Court has not yet determined when, if ever, judicial estoppel bars a plaintiff-debtor's lawsuit that was undisclosed in bankruptcy proceedings, and different Court of Appeals panels apply different frameworks for that analysis. Presumably because judicial estoppel is a discretionary, equitable doctrine, some panels assume that it is for a judge rather than a jury to decide whether the plaintiff-debtor intended to deceive, in which case the doctrine may apply. *Capalla*, 198 N.E.3d at 34–35. Other panels use a burden-shifting framework to determine whether the debtor acted in bad faith. *Morgan Cnty. Hosp. v. Upham*, 884 N.E.2d 275, 280 (Ind. Ct. App. 2008), *trans. denied*. And they treat the debtor's intent the same as other factual issues—they deny summary judgment if there is any conflicting evidence or inferences, leaving the question for the jury to decide. *Id.* at 283.

Some panels also require the court to "consider all of the equities, which would include the interests of the plaintiff/debtor's creditors." *Id.*; *see also Price v. Kuchaes*, 950 N.E.2d 1218, 1229 (Ind. Ct. App. 2011), *trans. denied*. And some panels say the doctrine cannot apply when the bankruptcy has been dismissed without discharging the debtor's debts. *Price*, 950 N.E.2d at 1230.

The parties here don't grapple with these distinctions, so we must leave choosing a framework for another day, but we can again look to *Hammes* for a bright-line rule that resolves this case: judicial estoppel does not

apply when the bankruptcy court permits a plaintiff-debtor to cure their omission by amending their asset schedule to include a previously omitted lawsuit. *Hammes*, 659 N.E.2d at 1028–29. In *Hammes*, we adopted the Court of Appeals' opinion in *Shewmaker v. Etter*, which held that in the context of a Chapter 7 bankruptcy, judicial estoppel did not bar the plaintiff's claim because the plaintiff "presented his omission to the bankruptcy court and was allowed to cure it." *Shewmaker v. Etter*, 644 N.E.2d 922, 931 (Ind. Ct. App. 1994), *opinion adopted by Hammes*, 659 N.E.2d at 1030. The Court of Appeals reasoned, and we agreed, that judicial estoppel applies only when the prior inconsistent position was "acted upon by the court." *Id.* And when a bankruptcy court allows the debtor to cure their previous omission, the court does "not rely upon the faulty asset schedule in making its final decision." *Id.*

The Seventh Circuit has taken a similar approach in the Chapter 13 bankruptcy context. In *Rainey v. United Parcel Service, Inc.*, Eddie Rainey sued UPS and one of its managers for race discrimination, but Rainey didn't disclose that lawsuit in his Chapter 13 bankruptcy. 466 F. App'x at 543. Just as Red Lobster urges here, the district court there dismissed the lawsuit based on judicial estoppel. *Id.* But the Seventh Circuit reversed because after UPS moved to dismiss based on the failure to disclose the lawsuit in the bankruptcy proceedings, Rainey amended his asset schedule to disclose his discrimination claim against UPS. *Id.* at 544.

The Seventh Circuit acknowledged that once the bankruptcy is closed, "a debtor no longer can pursue claims on behalf of the estate, and typically will be estopped from pursuing claims for his *own* benefit if those claims were concealed from creditors during the bankruptcy proceedings." *Id.* (emphasis in original). "But as long as the bankruptcy proceedings are ongoing . . . a Chapter 13 debtor can inform the trustee of previously undisclosed legal claims, and unless the trustee elects to abandon that property, the debtor may litigate the claims on behalf of the estate and for the benefit of the creditors without court approval." *Id.*

That is precisely Fricke's position here. While her Chapter 13 bankruptcy was still ongoing, she amended her asset schedule to disclose her lawsuit against Red Lobster, and neither her initial omission nor her

amendment affected the bankruptcy proceedings in any way. The trustee and creditors didn't take any action based on the disclosure and its timing, including that they didn't seek to modify Fricke's court-approved plan for repaying her debts. Ultimately, the bankruptcy court dismissed Fricke's bankruptcy without discharging her debts, so her initial omission and later disclosure didn't impact any debt discharge either. Just as in *Rainey* and *Shewmaker*, neither the bankruptcy court nor the creditors were deceived, and Fricke did not prevail on any contrary representation in her bankruptcy proceedings, so judicial estoppel does not apply.

Red Lobster argues our approach conflicts with federal law on judicial estoppel, but *Rainey* illustrates that view is mistaken. And we aren't bound by federal law on judicial estoppel anyway. While we apply federal bankruptcy law to determine what Fricke's obligations were to the bankruptcy court, that is where federal law runs out. Fricke is pursuing a state law negligence claim against Red Lobster in our state courts, so we must apply our own estoppel law to determine whether judicial estoppel bars a state law remedy.

Red Lobster also warns that permitting plaintiff-debtors to cure their omission after a defendant brings it to light through a dispositive motion encourages plaintiff-debtors to hide their assets. "If the debtor succeeds in hiding the assets, the debtor wins; if the debtor is caught hiding assets, he or she is in no worse position for having attempted to subvert the bankruptcy process." Appellant's Br. at 24.

But we apply judicial estoppel to protect the integrity of our own state court proceedings, not as a sanction or deterrent for bad behavior in other courts that have declined their own opportunity to impose sanctions. "Debtors and their attorneys face penalties under various provisions for engaging in improper conduct in bankruptcy proceedings." *Taylor v. Freeland & Kronz*, 503 U.S. 638, 644 (1992). The bankruptcy court's form petition, which Fricke submitted, warns: "If you knowingly and fraudulently conceal assets or make a false oath or statement under penalty of perjury—either orally or in writing—in connection with a bankruptcy case, you may be fined, imprisoned, or both." App. Vol. II at 113. And the federal government has an arsenal of deterrents to

misleading the bankruptcy court, including criminal penalties for bankruptcy fraud,[3] the denial of debt discharge,[4] penalties for perjury,[5] and sanctions for false representations to the bankruptcy court.[6]

Judge Easterbrook, writing for a unanimous Seventh Circuit panel, has explained that "[i]nstead of vaporizing assets that could be used for the creditors' benefit, district judges should discourage bankruptcy fraud by revoking the debtors' discharges and referring them to the United States Attorney for potential criminal prosecution." *Biesek*, 440 F.3d at 413. That charts a prudent course, and if protecting the integrity of the bankruptcy proceedings isn't a sufficient reason for federal courts to bar a lawsuit, then it isn't a sufficient reason for state courts to either.

After Fricke amended her asset schedule, the bankruptcy court, the bankruptcy trustee, and Fricke's creditors all learned of this lawsuit, and none of them sought any sanctions or other form of relief based on the disclosure. That is unsurprising since neither Fricke's initial omission nor her subsequent disclosure impacted the bankruptcy proceedings in any way. As in *Hammes*, if the bankruptcy court saw no reason to sanction the omission, then our state courts also have no good reason to.

In short, Fricke did not mislead the bankruptcy court and did not prevail on a position in her bankruptcy proceedings that contradicts her claim in this state court negligence action. Her representations to the

---

[3] 18 U.S.C. §§ 152, 157.

[4] 11 U.S.C. § 727(a)(2), (a)(4) (Chapter 7 bankruptcy); *id.* § 1328(e) (Chapter 13 bankruptcy); *id.* § 1330(a) (Chapter 13 bankruptcy).

[5] Fed. R. Bankr. P. 1008.

[6] Fed. R. Bankr. P. 9011.

bankruptcy court therefore do not judicially estop her from pursuing her personal injury claim against Red Lobster.[7]

# Conclusion

For these reasons, we affirm the trial court.

Rush, C.J., Massa, Slaughter, and Goff, JJ., concur.

---

[7] Red Lobster also appeals the trial court's order denying Defendant Red Lobster's Motion to Strike Plaintiff's Affidavit. Fricke submitted that affidavit in response to Red Lobster's summary judgment motion to explain why she omitted the lawsuit from her bankruptcy disclosure and why she responded to the interrogatory by stating that she had not previously filed for bankruptcy. We summarily affirm the Court of Appeals' decision to affirm the order denying the motion to strike. App. R. 58(A)(2).

ATTORNEYS FOR APPELLANT RED LOBSTER RESTAURANTS, LLC

Katherine M. Haire

Nicholas G. Brunette

Reminger Co., L.P.A.

Indianapolis, Indiana

ATTORNEY FOR APPELLANT PROGRESSIVE FLOORING SERVICES, INC.

Richard W. McMinn

Nationwide Trial Division

Carmel, Indiana

ATTORNEYS FOR APPELLANT DWAYNE FEATHEROFF

John H. Brooke

Andrew Barchet

Brooke & Struble P.C.

Muncie, Indiana

ATTORNEYS FOR APPELLEE ABIGAIL FRICKE

David W. Stone

Stone Law Office & Legal Research

Anderson, Indiana

Bradford J. Smith

Ken Nunn Law Office

Bloomington, Indiana